## ANNIE F. KING v. ST. LOUIS UNION TRUST COMPANY, Appellant.

### Division Two, March 15, 1910.

1. **EQUITABLE EASEMENTS: Run With Land.** Restrictions in a deed establishing a building line, limiting the use of the lots to high class residences to cost not less than ten thousand dollars each, prohibiting the building of more than one residence on each 100-foot lot, and prohibiting the erection of any flat or apartment house thereon, are classed as equitable easements, and run with the land.

2. ———: ———: **Constructive Notice: Chain of Title.** And where the deed to plaintiff's grantor recites such restrictions and says they are imposed upon each lot in the subdivision for the benefit of every other lot therein, the defendant, who claims through the same common grantor, and took a deed for other lots in the subdivision subsequent to the time the deed to plaintiff's grantor was recorded, containing no such recitals, is, under the statute, chargeable with constructive notice that his lots were burdened with the restrictions imposed by the deed to plaintiff's grantor. And while the deed to plaintiff's grantor containing said restrictions is not directly in defendant's chain of title, it is intimately related to the land conveyed to defendant, being adjoining or near-by lots in the same subdivision, and the deeds of both are derived from the same common grantor, who recorded a plat establishing the "building line for each lot," but not reciting the other restrictions.

3. ———: **Actual Notice.** A recital in defendants' deed that "all of said above described real estate is subject to all restrictions now of record against same," if not of itself actual notice to defendant of restrictions imposed, upon all lots of the platted subdivision, by a recorded deed to plaintiff through a common grantor, is at least sufficient to put an ordinarily prudent person on inquiry, and to place upon him the duty to examine the records for the restrictions imposed by the deed in plaintiff's chain of title.

4. ———: **Injunction.** Injunction is the proper remedy, by the owner of one lot burdened with an equitable easement, to prevent the construction of buildings by the owner of other lots burdened with the same easement, in violation of said restrictions.

5. ———: ———: **Proof: Threats By Agent.** Where defendant in its answer denies that its lots were burdened with an equitable easement, and nowhere therein disclaims its intention, charged by plaintiff, of selling the land without the restrictions, and the proof shows that another company is defendant's agent to sell the land and that company's president had said to plaintiff that "he meant to sell the land for any purpose he could" and wrote a letter to plaintiff avowing that purpose, it will be held that defendant did intend to violate said restrictions, and the injunction will be made absolute.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas*, Judge.

AFFIRMED.

*E. W. Banister* for appellant.

(1) A party is charged with constructive notice only of such instruments as appear in the chain of his title. Railroad v. View, 156 Mo. 616; Crockett v. Maguire, 10 Mo. 34; Dingman v. McCullom, 47 Mo. 372; Tydings v. Pitcher, 82 Mo. 379; Ford v. Church Society, 120 Mo. 511; Odle v. Odle, 73 Mo. 289; Becker v. Stroeber, 167 Mo. 322; Payne v. Markle, 89 Ill. 66; Sensenderfer v. Kemp, 83 Mo. 589. (2) Upon the whole record, the court erred in rendering a decree against appellant, because it clearly appears that appellant had not violated nor was it about to violate, nor had it threatened to violate, any restriction on its real estate. (3) The covenants of the Rex Realty Co., contained in the Sweringen deed, are merely personal covenants of that company, and do not amount to limitations or restrictions.

*Kinealy & Kinealy* for respondent.

(1) Restrictions of the character set out in the deed of the Rex Realty Co. to Mrs. Sweringen are classed as easements and incumbrances. 5 Am. and Eng. Ency. Law (2 Ed.), 5, 6, 7. (2) The defendant was required to take notice of every conveyance of

the Rex Realty Co., its grantor, affecting the lot in Rex subdivision purchased by it, which was of record at the date of its purchase. R. S. 1899, secs. 923, 924; Crockett v. Maguire, 10 Mo. 34; Dingman v. McCullom, 47 Mo. 372; Ford v. Church Society, 120 Mo. 512. (3) The Rex Realty Co., in its deed to Mrs. Sweringen, states that it had imposed those restrictions, set forth in that deed, upon each lot in Rex subdivision, for the benefit of every lot therein. The truth of this recital is conclusive on defendant, because the recital of a fact in a deed is conclusive of its truth on the grantor and on all claiming under him. Tyler v. Hall, 106 Mo. 318; Dickson v. Anderson, 9 Mo. 157; Clamorgan v. Green, 32 Mo. 285; Bailey v. Trustees, 12 Mo. 175; Ford v. Grey, 1 Salk. 285; Carvers v. Jackson, 6 Pet. 610; Jackson v. Halstead, 5 Cow. 216; Penrose v. Griffith, 4 Binney 235; Stowe v. Wyse, 7 Conn. 214; Bank v. Vance's Admr., 4 Littell 173. (4) The covenant of the Rex Realty Co., in its deed to Mrs. Sweringen, to insert restrictions in its deeds to subsequent purchasers of other lots in Rex subdivision, created a duty to do so, and is deemed a conveyance imposing those restrictions on those lots. Marvin v. Stimpson, 23 Col. 174. (5) The Rex Realty Co., the grantor, in its conveyance to Mrs. Sweringen, duly recorded, of a lot of land in Rex subdivision owned by it, had the power and the right, for the benefit of its grantee, to impose the restrictions set forth in that deed, on the other lots of that subdivision, which would be (and are) binding on defendant as a subsequent purchaser of those other lots; and as such purchaser defendant was affected with (constructive) notice of those restrictions, by the record of that deed of the Rex Realty Co. to Mrs. Sweringen. Compton Hill Co. v. Towers, 158 Mo. 290; Holt v. Fleischman, 78 N. Y. S. 647; Landall v. Hamilton, 175 Pa. St. 336; Hills v. Miller, 2 Paige 254; Halle v. Newboldt, 69 Md. 265; McLean

v. McKay, L. R., 6 Privy Council App. 327; Kirkpat-rick v. Puschine, 24 N. J. Eq. 206; Trustees v. Lynch, 70 N. Y. 440; Mann v. Stephens, 15 Sim. 377.  (6) Under the pleadings and the evidence, Holbrook was acting within his authority, as defendant's agent, in writing the letter to Mr. Barrett, read in evidence, and in announcing the intention to sell the lots acquired from the Rex Realty Co., regardless of the restrictions in the deed of that company to Mrs. Sweringen.   Western Union v. Guernsey, 46 Mo. App. 140; 5 Am. and Eng. Ency. Law (2 Ed.), 41.

BURGESS, J.—This is a suit to enjoin the defendant company from erecting, or procuring others to erect, buildings of a certain character on certain building lots owned by it in the city of St. Louis.

The petition alleges, in substance, that the Rex Realty Company, a corporation, had laid out a subdivision in Block No. 3892, in the city of St. Louis, known as "Rex Subdivision," which was more than ordinarily suitable for residences for wealthy persons, and in order to insure the use of same for high-class residence purposes, and that no business or apartment houses or flats might be built thereon, imposed incumbrances and restrictions on each and every lot of said subdivision for the benefit of every other lot therein, and of the future owner of such lot, which restrictions and incumbrances, in addition to others of a minor character, were as follows:  That there should be a fifty-foot building line south of and parallel with the south line of Pine street; that but one building should be erected on each lot, and that such building should be used exclusively for private residence; that no building should be arranged, used or occupied as flats, nor should said lots, or any part thereof, ever be used or occupied for trade or business of any kind; that no building erected on any of such lots should cost less than ten thousand dollars.

Plaintiff further averred in her petition that said incumbrances and restrictions greatly enhanced the market value of the lots; that Martha Sweringen plaintiff's grantor, purchased lots B and C, and the eastern five feet of lot D, in said subdivision, and that the Rex Realty Company's conveyance to her recites that said company had imposed said restrictions and incumbrances against said land for the benefit of every other lot therein, and for the benefit of said Martha Sweringen, her heirs and assigns, including the lots in said subdivision afterwards sold to defendant; that afterwards said Martha Sweringen built on a part of the land purchased by her, and afterwards sold all of lot B and part of lot C to plaintiff; that afterwards the Rex Realty Company sold to defendant lots A, D, E, fifteen feet of lot F, and lots H and I, of said Rex subdivision, and that defendant, then and there at the time, had full knowledge of said restrictions and incumbrances, and that they bound the lots so purchased by defendant, but that defendant, nevertheless, caused said lots, so acquired by it, to be divided into smaller portions, and is offering these divisions of lots for sale, with permission to erect thereon apartment houses and flats, and has entered into contracts and agreements for the erection on said divisions of said lots buildings for business purposes, apartment houses and flats, and threatens to erect immediately apartment houses or flats on all such portions of said lots, and is, and by its agents is, urging and seeking to have others erect flats and apartment houses on said lots or portions of said lots, all in violation and annulment of the restrictions and incumbrances aforesaid, and all of which will injure the value of said lots and part of lot purchased by plaintiff, and render them undesirable for residence purposes.

Plaintiff prays that defendant be enjoined from taking any further steps in violation of said restrictions and incumbrances, from erecting, or procuring or

urging others to erect, any building on the lots so purchased by it, for business purposes, or for use as apartment houses or flats, or for any other purpose than as a dwelling such as is described in said restrictions and incumbrances.

Defendant filed its amended answer, admitting that it was a corporation, and denying every other allegation in the petition. Further answering, defendant states "that on or about the 4th day of May, 1905, it purchased and acquired from the Rex Realty Company, in consideration of a large and valuable consideration paid by defendant to said Rex Realty Company, to-wit, the sum of $52,500, all of lot A, the western seventy feet of lot D, all of lot E, the eastern fifteen feet of lot F, all of lot H, and the western seventy-three feet of lot J, of said Rex subdivision referred to in plaintiff's petition herein; but defendant says that neither at the time it so purchased said real estate, nor at any time prior thereto, did it have any notice or knowledge, either actual or constructive, that any attempt had been made to place any of the pretended restrictions or incumbrances mentioned in plaintiff's petition upon or against the same, or any part thereof; that it paid full value for said lots, and that if any attempt had theretofore been made by any one to restrict or incumber said real estate in the manner stated in plaintiff's petition, this defendant says such attempt was and is without force or effect so far as this defendant is concerned, because neither at the time defendant purchased said lots, nor any time prior thereto, did it have any notice or knowledge, actual or constructive, that any such attempt had been made so to restrict or incumber said land or any part thereof. And defendant denies that any such restrictions or incumbrances do or ever did in fact exist against said real estate or any part thereof."

For reply, plaintiff denied each and every allegation of new matter set forth in the answer.

The evidence shows that the Rex Realty Company, a corporation of the city of St. Louis, owned the north half of city block 3892, in said city, and subdivided it into lots A to M, inclusive, a certified copy of the plat of which property, known as "Rex Subdivision," was introduced in evidence, and showed a building line fifty feet south of the curb line on the south side of West Pine Boulevard. Attached to said plat was the following writing:

"The undersigned proprietors of the north half of city block No. 3892 have caused said tract of land to be surveyed and subdivided in the manner as shown on the above plat, and which said subdivision is to be known as 'Rex Subdivision' of the north half of block 3892.

"A building line for each of said lots is hereby established fifty feet southwardly from and parallel to the south line of Pine street, and no building is to be erected on said lots extending north of said line; but the steps and platform in front of the entrances may extend eight feet beyond the building line.

"In witness whereof, the Rex Realty Company has caused these presents to be signed by its president, countersigned by its secretary, and its corporate seal to be attached, this the 25th day of April, 1895."

The said writing was signed by the president and secretary of said Rex Realty Company, and its corporate seal attached thereto. The plat, which was duly sworn to and acknowledged, and recorded on the third day of October, 1895, contains no other restrictions or limitations on the use of said lots than those mentioned.

The plaintiff purchased one of these lots from her mother, Mrs. Martha Sweringen, on March 12, 1896, receiving her warranty deed. Mrs. Sweringen had purchased the same lot from the Rex Realty Company, which executed to her its deed, dated October 17, 1895, and recorded in the recorder's office of the

city of St. Louis on October 21, 1895, which deed contained the following clauses:

"That whereas, the party of the first part, being the owner in fee of a tract of land in the city of St. Louis, caused it to be subdivided into lots under the name of 'Rex Subdivision,' and caused a plat of said subdivision to be duly recorded in the recorder's office of the city of St. Louis, State of Missouri, in plat book No. 15, page No. 86.

"And whereas, said party of the first part has spent large sums of money in improvements designed to make said 'Rex Subdivision' suitable and desirable for purposes of residence, and has, in order that said subdivision may remain a residence district exclusively, imposed upon each lot in said subdivision, for the benefit of every other lot therein, conditions and restrictions in the use thereof, which so far as applicable to the lot hereby conveyed, are hereinafter set forth:

"And whereas, the easement thus created and made appurtenant to each lot is an inducement to the party of the second part to make the purchase evidenced by this deed.

"Now, therefore, the said party of the first part, in consideration of the premises and of the sum of eighteen thousand two hundred dollars to it paid by the said party of the second part, the receipt of which is hereby acknowledged, does by these presents, grant, bargain and sell, convey and confirm unto the said party of the second part, her heirs and assigns, a lot or parcel of land in the city of St. Louis, State of Missouri, and designated as lots B, C, and the eastern five feet of lot D, upon the plat of said 'Rex Subdivision' in City Block Number 3892 of the city of St. Louis, which lots or parcels of land contain a front of 130 feet on the south line of Pine street, and extend southwardly in equal width 213½ feet to an alley, and bounded on the north by Pine street, south

by an alley, east by a line one hundred feet west of the west line of Taylor avenue, west by the remainder of lot D, of said subdivision.

"To have and to hold the above-described lot or parcel of land, with all and singular, the easements, rights, privileges and appurtenances thereunto belonging or in any wise appertaining, unto the said party of the second part, and unto her heirs and assigns forever.

"Provided nevertheless, and the conveyance hereby made is subject to these reservations, easements, restrictions, covenants and conditions that shall remain in full force and effect for twenty-five years from the date of their deed; that is to say:

"1.   The building line of the lot hereby conveyed shall be fifty feet from and parallel with the south line of Pine street, as shown on said plat; and no building or any part or portion thereof, shall at any time be erected or placed upon the space between said building line and said street; nor shall any projection of such building, of whatever character, be permitted to extend into or encroach upon said space, except that the steps and platform in front of the main door may extend over said building line not to exceed eight feet.

"2.   But one building shall be erected or placed upon each of said lots, and such buildings shall never be used or occupied for any purpose except for that of private residence exclusively; nor shall any part or portion thereof ever be used or occupied except solely as a residence; nor shall such buildings be arranged or ever used or occupied as flats; nor shall said lots or any part thereof ever be used or occupied for trade or business of any kind whatever.

"3.   As appurtenant to the residences and to be used only in connection therewith, an outhouse, stables or other subsidiary buildings may be erected on the lot hereby conveyed.

"4. No building, the actual cost of which is less than ten thousand dollars, shall be erected on said lots, nor shall any fence or inclosure of any kind be put up on the side lines of the lots between the street and the building line; nor shall the existing grade of the lot, for a distance of sixty feet from the street, be changed more than twenty-four inches, unless by consent of the party of the first part and the owner of the adjoining lot on each side. . . .

"And if the said party of the second part, or any person claiming under him, shall at any time violate or attempt to violate, or shall omit to perform or observe any one of the foregoing restrictions and conditions, it shall be lawful for any person owning a lot in 'Rex Subdivision' which is subject to the same restriction or condition in respect to which the default is made, to institute and prosecute appropriate proceedings at law or in equity for the wrong done or attempted.

"And said party of the first part hereby covenants to and with the said party of the second part, her heirs and assigns, that it will not at any time hereafter convey or otherwise dispose of any lot in 'Rex's Subdivision' except upon and subject to such restrictions and conditions as are hereinbefore mentioned and as are common to all the lots in said subdivision."

Upon the lot so purchased from Mrs. Sweringen the plaintiff erected a residence costing $20,000, and other parties erected high-class houses on lots in the same subdivision, each costing more than ten thousand dollars.

On May 1, 1905, the Rex Realty Company conveyed by deed the remaining lots in said subdivision to the defendant company, which deed did not set forth the restrictions and conditions contained in the deed to Mrs. Sweringen, but the deed to said company, after describing the property conveyed, contained the following recital: "All of said above-described real

estate being subject to all restrictions now of record against same.'' On the same date the defendant company, as party of the second part, entered into an agreement with the Holbrook-Blackwelder Real Estate Trust Co., as party of the first part, which agreement contained the following:

"Now, therefore, in consideration of the premises, the said party of the first part agrees as follows:

"To guarantee the sale of the above-described Pine street property within twelve months from this date, at prices which, in the aggregate, after payment of the incumbrance and interest thereon, will net to the party of the second part the sum of seventy thousand dollars, and interest thereon at the rate of five per cent per annum from date.

"To this end, the said party of the first part hereby agrees to take charge of and manage said above-described property for account of said party of the second part and to effect a sale thereof at the best price obtainable, subject to the approval of the said party of the second part, and to make no charge for commission on account of the above exchange of properties or on account of the sale of the above-described acquired properties, until sales have been made, realizing to said party of the second part said sum of $70,000 and interest at five per cent per annum from this date.''

The said agreement contained other provisions to the effect that after said amount had been so realized and paid to the St. Louis Union Trust Co., the Holbrook Company should be allowed a commission of two and one-half per cent on the sale of said property, the balance of the sum realized to be divided equally between the two companies; that if, at the end of twelve months, the St. Louis Union Trust Co. should not have realized $70,000 from such sales, then the Holbrook Company should purchase the property at a price to net the former $70,000 and interest at five per cent.

After said agreement had been entered into, the Holbrook Company put up signs on those lots indicating that the same were for sale by said company, and on May 11, 1905, W. J. Holbrook, president of said company, wrote to J. V. S. Barrett, business agent of Mrs. King and Mrs. Sweringen, a letter containing the following notification:

"I now wish to call your attention to the fact that we are negotiating with a party who wants to buy the said one hundred feet for the purpose of erecting thereon a high-class apartment house. We have had the title thoroughly investigated, and our attorney, as well as the Title Guaranty Trust Co., reports that the lot is unrestricted in our deed from Mr. Carpenter, except as to a building line and nuisance clause, with no provision of any kind for restricting the one hundred feet to one building or any class of building. You may have a claim against Mr. Carpenter for some restrictions as to the number of houses that shall occupy said lot, but under this deed to us it can be used for the purpose above outlined, and unless you can get the other property-owners there to agree to sell the property to parties who may want to build two high-class residences on one hundred feet, we will make the sale of the southwest corner of Taylor and Pine to the party who wants to build an apartment house thereon. Trust you will consider this as meaning exactly what we say, and not in any way as a bluff or threat. We simply wish to give you the opportunity of protecting the value of your property without cost or trouble of any kind to yourselves."

J. V. S. Barrett, testifying for the plaintiff, stated that prior to the receipt of said letter he had had a conversation with Mr. Holbrook, president of the Holbrook Company, in which conversation Holbrook told him that he meant to sell the property for any purpose he could, and that it was not restricted; that he (Barrett) notified Holbrook that there were restric-

tions, and that Holbrook then said there were no restrictions so far as he was concerned, and that he was going to sell the property. The witness further testified: "I had that conversation, and had subsequent conversations with him. I told him that the property was acquired by Mrs. Sweringen from Mr. Carpenter, who had been executor and administrator of the estate of her family and our family; that he had drawn up a deed to Mrs. Sweringen and that the property was absolutely restricted, and against flats, apartment houses, public buildings of any kind, and that houses must be at least fifty feet from the curb line, and Mr. Carpenter guaranteed never to make any deed except in conformity to that. I said that to Mr. Holbrook, and read the deed to him. He said he had no deed like that. He said he would not carry out those restrictions in the deed; he would sell it for any purpose he could. I represent Mrs. King, and did represent Mrs. Sweringen. I was manager of their business. I so represented them when I had this conversation with Mr. Holbrook." On cross-examination, the witness said: "The conversation that I have spoken about was had after the defendant acquired title to the property. I never talked with Mr. Holbrook about the property before the appellant had taken the title."

The "Mr. Carpenter" referred to in the testimony of witness Barrett was president of the Rex Realty Company, and as such signed the said deeds of said company to Mrs. Sweringen and to the defendant company.

Isaac H. Orr, an officer of the defendant company, testified for plaintiff that he knew nothing about any restrictions on the property, and further said: "This property is held by us in my department—in the trust department—all of which I have charge of. If the matter of the sale of this property would come up, Mr. Holbrook might talk to any of the officers about it.

I would probably sign the contract for sale. Any officer of the trust company could sign it.''

A number of witnesses owning property in the said Rex Subdivision testified for plaintiff to the effect that the residences thereon were all high-class residences, costing from $25,000 to $35,000 each; that it would depreciate the value of the property to divide it into twenty-five-foot lots, or if residences costing less than $10,000, or flats or apartment houses should be built thereon.

W. J. Holbrook, president of the Holbrook-Blackwelder Real Estate Trust Co., testified in behalf of the defendant that his company acted for the defendant in purchasing the property, and that he acted for his company in the matter. He further testified: ''The St. Louis Union Trust Company paid full value for this land. In all the negotiations for the purchase of this land I understood that it was unrestricted property. I do not know anything about such restrictions as are set up here. Mr. Hess represented Mr. Carpenter, and he said there were no restrictions on this property. I acted for the St. Louis Union Trust Company, and knew nothing about any such restrictions.''

Defendant offered in evidence a deed, dated May 31, 1872, from Monroe R. Collins and wife to Benjamin F. Caton, to the property in question, and other property, which deed contained the following provisions:

''This deed is made subject to the following conditions, and as a part of the consideration, that if the party of the second part or his assigns shall ever permit or suffer or cause or procure to be erected, or used upon the property hereby conveyed or any part thereof, any soap, candle, lard oil, blue, starch, rope, hemp dressing, or lead factory, slaughter-house, stock or hog yard, foundry, iron or chemical works or other manufactory of any kind that cause offensive odors or any other nuisance, then the property hereby conveyed

shall revert to the grantors and their heirs as if this deed had never been made.''

The court found in favor of the plaintiff, and decreed that the defendant be perpetually enjoined from erecting or causing or procuring others to erect any business or apartment house or flat building upon any portion of lots A, D, E, F, H, and J, of the said subdivision, and from erecting or causing or procuring others to erect more than one building to be occupied as a private residence upon any one of said lots, and that plaintiff recover of the defendant the costs of the proceeding, etc. From this judgment, after an unavailing motion for a new trial, defendant appealed to this court.

Restrictions of the character set out in the deed of the Rex Realty Company to Mrs. Sweringen are classed as equitable easements, and run with the land. [5 Am. and Eng. Ency. Law (2 Ed.), pp. 4, 5, 6; Washburn on Real Property (6 Ed.), vol. 2, secs. 1241, 1242.] ''In that not uncommon class of cases in which the owner of a tract or block sells lots with covenants as to their use, or as to the sale and use of the remaining lots, such covenants inure to the benefit of all subsequent purchasers of the remaining lots, and create rights in the nature of easements in their favor, which are enforceable against the successors of the original purchasers.'' [11 Cyc., p. 1093.]

The Rex Realty Company, in its deed to Mrs. Sweringen, plaintiff's grantor, states that it has imposed the restrictions set forth therein upon each lot in said subdivision, for the benefit of every other lot in the subdivision. This deed was executed October 17, 1895, and acknowledged and recorded on the 21st day of October, 1895, antedating the deed to the defendant almost ten years. Defendant, however, contends that it is not charged with constructive notice of anything contained in said deed.

Section 923, Revised Statutes 1899, provides: "Every instrument in writing that conveys any real estate, *or whereby any real estate may be affected, in law or equity,* proved or acknowledged and certified in the manner hereinbefore prescribed, shall be recorded in the office of the recorder of the county in which such real estate is situated."

Section 924 provides: "Every such instrument in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the recorder for record, impart notice to all persons of the *contents* thereof, and *all subsequent purchasers and mortgagees shall be deemed, in law and equity, to purchase with notice.*"

We think, under these statutory provisions, the defendant, being a subsequent purchaser from the same grantor, was charged with constructive notice of the prior recorded deed to Mrs. Sweringen, which undoubtedly *affected* the lots purchased by the defendant.

Defendant insists, however, that a purchaser is not affected with constructive notice of anything that does not lie within the course of the title with which he is dealing. This involves the question of what is meant by chain of title. In Ford v. Unity Church Society, 120 Mo. 1. c. 512, the court, citing Rawle on Covenants for Title (5 Ed.), sec. 259, says: "He (Mr. Rawle) says nothing is more simple than what is termed 'the line of title.' It is that the first purchaser should search the registry for the deed to his vendor, and trace the title thence back to its source. If he finds no title in him, . . . then it is his fault if he takes the deed. Now as to the second purchaser, one who buys after the vendor acquires a title. He searches till he finds the deed to his vendor, and traces the title back to its source. He finds it regular, and that since his vendor acquired the title he has not conveyed to any one else. He is not expected to look for conveyances from his vendor prior to the time the vendor acquired title."

These two last sentences simply mean that the purchaser is expected to search the registry for all conveyances from his vendor, after the time the vendor acquired title, so that he, the purchaser, may know whether his vendor has conveyed the land purchased to any one else. If he is presumed to do this, is he not also presumed to look for conveyances from his vendor which might affect or incumber the vendor's title to the land conveyed to the purchaser? We think so. The purchaser cannot take any better title than his vendor had to convey. In Digman v. McCollum, 47 Mo. l. c. 374, the court said: "The general rule on this subject undoubtedly is that a purchaser must at his own peril inquire into the state of his grantor's record title, since he will be affected with constructive notice of all duly-recorded conveyances by his grantor affecting that title. I am aware of no exception to this rule, although it has repeatedly been decided that a purchaser is not affected with constructive notice of anything that does not lie within the course of the title with which he is dealing, or that is not in some way connected with it; or as Judge Scott expressed it in Crockett v. Maguire, 10 Mo. 34, the 'registry of a deed is only evidence of notice to after-purchasers from the same grantor;' that is, from the grantor in the registered deed. . . . If a party has in fact a title, whether of record or not, he may incumber it, and that may be shown by the record. Prudent men will make the proper search preliminary to their purchases. The law presumes that they do so, and courts, as has already been remarked, act upon that presumption. This is the undisputed doctrine in relation to legal titles, and we are furnished with no decided case, dictum or reason, against applying the rule to equitable as well as legal titles and interests." From this decision, and the Maguire case referred to therein, it is clear that a purchaser is affected with constructive notice of all duly-recorded conveyances by his grantor

affecting the latter's title; and the deed to Mrs. Sweringen did affect the grantor's title in this, that the grantor could not convey any of the lots in "Rex Subdivision" save subject to the restrictions and conditions set out in the deed to Mrs. Sweringen. In that deed the grantor covenanted "that it will not at any time thereafter convey or otherwise dispose of any lot in Rex's subdivision except upon and subject to such restrictions and conditions as are hereinbefore mentioned, and as are common to all the lots in said subdivision." The rule is that a recital in a deed of a fact will generally conclude the grantor and his privies. [Dickson v. Anderson, 9 Mo. 157; Bailey v. Trustees, 12 Mo. 175; Clamorgan v. Greene, 32 Mo. 285.] As the defendant bought its lots, we might say, incumbered with the covenant to the plaintiff, this created a privity between them. [Hisey v. Presbyterian Church, 130 Mo. App. l. c. 572.]

In the case of Imp. Co. v. Tower's Ex. and Devisees, 158 Mo. 282, which was something like the case at bar, Judge GANTT, speaking for the court, said: "The contention of plaintiff is that by his deed to Nolker, George F. Tower imposed upon the remainder of his tract in City Block 1366, a servitude for the benefit of the Nolker lot, which amounts to an equity running with the land as an easement appurtenant thereto. Authorities are cited and reasons urged to sustain this proposition, and the corollary that injunction is the proper remedy for a breach of such covenants. We think these are correct statements of the law."

The case of Holt v. Fleischman, 78 N. Y. S. 647, embraces all the salient features in this case. That was a suit brought by Mrs. Holt to enjoin Fleischman from erecting a building in violation of a covenant in a deed from Ann Bushnell to Perley Holt. Mrs. Bushnell owned 155 feet of ground on Twenty-ninth street, in New York City, and conveyed twenty feet

thereof to Perley Holt, under whom the plaintiff claimed. In Mrs. Bushnell's deed to Holt, after setting out several restrictions on the purchase, she inserted the following covenant: "That whenever she or her heirs or assigns shall improve her adjoining lot or lots on Twenty-ninth street, such improvement shall consist in the erection of one or more first-class dwelling-houses, the fronts of which shall be placed upon a line with those of the other houses aforesaid, and her said lot or lots shall be subject to the same restrictions as aforesaid as to alleyway, outside privy or stable." This deed was duly recorded, and afterwards there was suit brought by Mrs. Bushnell's devisees to partition the remaining property. Under the judgment in the partition suit the property was sold at public auction, and Fleischman became the purchaser of one of the lots affected by the covenant in Mrs. Bushnell's deed to Holt. In the deed to Fleischman, however, there was no reference to said covenants. Fleischman prepared to erect on his lot a building of such a character as violated the covenants. As a defense, Fleischman claimed that he had no actual or constructive notice of those covenants, and that nothing was disclosed putting him upon inquiry before he completed his purchase and took title. The court decided that Fleischman was bound by Mrs. Bushnell's covenants as recited in her deed to Holt, and that the record of that deed imparted notice of such covenants. As to this the court said: "In examining the title it was to be found that in 1866 Ann Bushnell, the owner of the whole tract, conveyed a portion of it, retaining another portion for herself. Her deed to Holt was recorded, and contained the covenant which restricted the portion of the land retained by her. Thus, there was placed on record a deed which separated her ownership of the whole tract, and which deed, had it been inspected, would have at once disclosed the fact

that the premises retained by Ann Bushnell were bur-
dened with the easement in favor of her grantee. If
that easement had been created by an independent
agreement between Mrs. Bushnell and Perley Holt, and
placed upon record, can it be doubted that the record
would have been notice to a purchaser? . . . Here
the agreement is contained in a deed, an examination
of which would be suggested by ordinary prudence.
It separated the ownership, and should have been look-
ed to, to ascertain whether restrictions or limitations
were imposed upon that portion of the property still
retained by the grantor. While the deed from Ann
Bushnell to Perley Holt is not directly within the de-
fendant's chain of title, yet it is intimately related to
the land retained by Mrs. Bushnell when she made the
covenant. We think the existence of this deed, with
the covenants, upon the record, must be regarded as
constructive notice to the defendant.''

In Mott v. Oppenheimer, 135 N. Y. 312, an agree-
ment had been entered into by the owners of adjacent
lots, whereby it was provided that either party, his
heirs or assigns, might erect a certain party wall, the
center line of which should coincide with the dividing
line of their lots. The defendant in that case claimed
that he took title without notice of the covenant. Judge
GRAY, who delivered the opinion of the court, said: ''If
the agreement constituted a charge upon the defend-
ants' lands, I think it quite immaterial whether the
conveyance of the title to them expressed their subjec-
tion to the agreement or not. The fact could not be
changed, and the plaintiffs could not be deprived of
any rights, which they may have derived through such
an agreement, by an omission in the deed to the adja-
cent owner; and of this agreement the defendants had
constructive notice from its public record, if they did
not have actual notice.'' It was held in that case that
the agreement mentioned constituted a charge upon
the defendants' land.

In Halle v. Newbold, 69 Md. 265, the heirs of Caroline Donaldson conveyed a lot to Thomas Donaldson by deed, duly recorded, which contained a covenant that on none of the other lots retained by the heirs should a house be built fronting less than twenty feet, or inferior to certain buildings named in the deed. Suit was brought to determine whether the title to the remaining lots retained by the grantors, and which were charged in the deed with the easements aforesaid, was in law clear of said easements as to a subsequent purchaser. The court cited a number of cases in support of its opinion that subsequent purchasers of the other lots were bound by the covenant, and said: "In the case at bar the grantors imposed the condition upon the land they *retained,* and *in favor of the land they sold, but the principle is the same in both cases;*" and the court then said: "It follows from what we have said that the land sold by Newbold to Halle is incumbered by the condition referred to, and that the title is not clear."

The foregoing decisions, and many more which we might cite, but with which we do not deem it necessary to burden this opinion, make it clear to our mind that the defendant was bound by the covenants and restrictions in the recorded deed of the Rex Realty Company to Mrs. Sweringen, and of which the defendant must be held to have constructive notice.

But there is yet another reason for our holding that the defendant is so bound. Although the deed from the Rex Realty Company to defendant does not set out the covenants and restrictions contained in the Sweringen deed, defendant's deed, after describing the lots conveyed to it, recites: "All of said above-described real estate being subject to all restrictions now of record against same." If this recital did not amount to actual notice, it was certainly of a character such as to put the defendant on inquiry as to said restrictions. It was undoubtedly sufficient to put an

ordinarily prudent man on inquiry, and if defendant did not search for the record of the instrument placing the said restrictions on its lots, it was guilty of negligence, and the blame rests solely with itself.

The defendant further insists that even though its lots were subject to the restrictions, covenants and agreements of the Rex Realty Company, as contained in the Sweringen deed, still the plaintiff would not be entitled to an injunction, for the reason that there was no evidence that it had violated, was violating, or had threatened to violate said restrictions, covenants and agreements.  In its answer to the petition, however, the defendant denies that there were any such restrictions on the land, and nowhere disclaims the intention, charged against it, of selling the land without those restrictions.  The agreement of the Holbrook Company with defendant shows that said company was the defendant's agent to sell without restrictions of any kind. Holbrook, president of said company, denied that there were any such restrictions, and told Mr. Barrett, plaintiff's agent, that "he meant to sell the property for any purpose he could."  Isaac H. Orr, one of plaintiff's officers, testified that he knew nothing about any restrictions, and further stated that if the property should be sold, he would probably "sign the contract for sale."  Holbrook's representations in his letter to and conversation with Mr. Barrett must be regarded as the defendant's representations.   The defendant went into this contest and acted all the way through as if Holbrook's representations were its own, and it cannot now, after judgment, be heard to deny Holbrook's authority to make those representations.

In W. U. Tel. Co. v. Guernsey, 46 Mo. App. 140, wherein the question of proof of defendant's intention was before the court, the court, after stating that the answer made no disclaimer of the intention imputed to defendant, held that the plaintiff "had the right to act on appearances, unless otherwise advised, when it

applied for relief." There is no hint in the record that the defendant did not intend to carry out its intention to sell the property without any restrictions, but its acts plainly show that it did intend to do so.

The plaintiff had no means of knowing what the defendant intended to do respecting the sale of the land, save by acts and appearances. The knowledge was the defendant's own. "Similar in result to the effect of presumptions is the effect of peculiar knowledge possessed by one party of the evidentiary facts which the other party claims would, if brought forward, tend to sustain the claim of the latter. In such case, if the party possessed of such knowledge fails · to bring forward the facts which it is shown can be produced by him alone, a presumption arises in favor of his adversary's claim." [5 Am. and Eng. Ency. Law (2 Ed.), 41.]

The decree of the lower court is affirmed. All concur.