HENRY FETE et al., Respondents, v. HENRY FOERSTEL et al., Appellants.

St. Louis Court of Appeals. Argued and Submitted April 5, 1911. Opinion Filed July 15, 1911.

1. BUILDING RESTRICTIONS: Validity: Abandonment of Part of Subdivision. Where a subdivision was laid out under a general plan of restrictions, the fact that the proprietors subsequently abandoned a certain portion of it lying west of railroad tracks and sold it as acre property would not affect the validity of the restrictive covenants as to lots lying east of the tracks, which were sold subject to, and improved in accordance with, such covenants.

2. ———: ———: Value of Improvements. Where the deeds to all the lots in a residential addition to a city contained covenants fixing a building line and prohibiting the sale of intoxicants, the fact that the improvements put in the addition were not of great value would not impair the validity of the covenants.

3. ———: Action to Restrain Violation: Waiver. In an action to restrain the violation of building restrictions, brought by several owners of property in the subdivision subject to the restrictions, the introduction in evidence of a document signed by a majority of property owners in the subdivision, consenting to the violation of the restrictions and waiving all objections thereto, would not affect the right of plaintiffs to maintain the action; and the fact that defendants obtained and introduced this document in evidence confessed, in a degree, the necessity of obtaining consent in order to make the improvement in violation of the restrictions.

4. ———: **Persons Benefited.** Restrictive covenants placed in the deeds to all lots in a residential addition to a city, which fixed a building line and prohibited the sale of intoxicants, inured to the benefit of all the owners.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

AFFIRMED.

*Buder & Buder* for appellants.

(1) The law favors the free and untrammeled use of real property. Restrictions in conveyances of the fee are regarded unfavorably, and are therefore strictly construed. Hutchinson v. Ulrich, 145 Ill. 33; Eckart v. Irons, 128 Ill. 568; 6 Am. and Eng. Ency. Law (2 Ed.), 513. (2) The covenant plaintiffs are seeking to enforce is merely a personal covenant, and inures to the benefit of the grantor only, and is enforceable only by him, his heirs and devisees. Doerr et al. v. Cobbs, 123 S. W., 547; Hisey v. Church, 130 Mo. App. 566. (3) One in default has no standing in equity to compel performance by another party similarly situated, and he who seeks to enforce a covenant against another must be without fault. He who seeks equity must do equity. Imp. Co. v. Tower, 158 Mo. 282; Pomeroy's Eq. Jur., secs. 3, 4; Warvelle on Vendors, 73–76; Bishpham's Prin. of Equity, secs. 67–69; Irwin v. Bleakley, 67 Pa. St. 24; Vawter v. Bacon, 89 Ind. 565; Cronk v. Trumble, 66 Ill. 18; Southworth v. Hopkins, 11 Mo. 331; Turner v. Mellier, 59 Mo. 526; Electric, etc., Co. v. Gill, 125 Mo. 140; Rosenburg v. Jones, 118 Mo. 559; O'Reilly v. Diss, 41 Mo. App. 184. (4) When lots are laid out with an established front, improvements erected fronting other than the established front is purely a violation of the restriction. Cook v. Benson, 62 Ia. 170. (5) Where specific performance is sought the contract must be certain

and mutual. Wendover v. Baker, 25 S. W. 918; Paris v. Haley, 61 Mo. 453; Taylor v. Williams, 45 Mo. 80. (6) It requires a much stronger case to maintain a bill to enforce specific performance than to resist such bill. Veth v. Gerth, 92 Mo. 67. (7) Where the circumstances surrounding a contract have so entirely changed as to render its enforcement inequitable, or where its enforcement would entail greater injustice than it would remedy, covenants of restriction will not be enforced. Pomeroy's Eq. Jur., 400; Story's Eq. Jur. pp. 750, 769–787; Bispham's Prin. of Eq., 578; Jackson v. Stephenson, 156 Mass. 496; Trustees v. Thatcher, 87 N. Y. 311; Charteri's Black Coal Co. v. Mellon, 152 Pa. 286; Starkie v. Richmond, 155 Mass. 188. The petition alleges that the scheme in 1888 was to make the property in question, Harlem Place, a high class residence property. Where the purpose of a certain restriction has failed or been abandoned, courts of equity will refuse to enforce the same. Columbia College v. Thatcher, 87 N. Y. 311; Scharer v. Pantler, 127 Mo. App. 317. (8) A bare intention of a common grantor conveying adjacent lots in a subdivision to different grantees at different times subject to restrictive covenants, to make the covenants inure to the benefits of all persons claiming under him by prior or subsequent deeds, is not sufficient, but the intent must be established by competent proof, and that subsequent purchasers bought with actual or constructive notice of it. Competent and sufficient proof must be furnished of the intention and that the defendant bought with actual or constructive notice of it. Doerr et al. v. Cobbs, 123 S. W. 547; Coughlin v. Barker, 46 Mo. App. l. c. 63.

*H. C. Sprague* and *Franklin Miller* for respondents.

(1) Proper building line restrictions will be enforced in equity. Coughlin v. Barker, 46 Mo. App. 54; Meriwether v. Joy, 85 Mo. App. 634; Scharer v.

Pantler, 127 Mo. App. 433; Hisey v. Church, 130 Mo. App. 566; Doerr v. Cobbs, 146 Mo. App. 342. (2) It is not necessary that the purpose of the restrictions be expressed in the deed, if the surrounding circumstances indicate the purpose. Coughlin v. Barker, supra; Meriwether v. Joy, supra; Doerr v. Cobbs, supra. (3) The question whether a restrictive covenant runs with the land is material in equity only on the question of notice; if it runs with the land, it binds all owners, whether they have knowledge of it or not; if it does not, then, in order to enforce the easement, it is essential that the owner has taken with notice of it. Coughlin v. Barker, supra; Meriwether v. Joy, supra; Hisey v. Church, supra; Doerr v. Cobbs, supra. (4) There is no abandonment of the general scheme or any substantial relaxation of it in the case at bar, for every such relaxation operates as a dispensation of the servitude *pro tanto*, and such dispensation in this case is negligible. Coughlin v. Barker, supra; Scharer v. Pantler, supra.

REYNOLDS, P. J.—This is a suit to enjoin defendants, Henry Foerstel and wife and one Moore, from proceeding with the erection of a building which the Foerstels have commenced, Moore being the contractor, on Arthur avenue, in Harlem Place, being on lot 18 of city block 4771, in the city of St. Louis. As the excavation has been made and the foundation walls laid, the north wall of the foundation is ten feet south of the south line of Arthur avenue, on which street the lot fronts. This lot is in what is called Harlem Place, a subdivision of the city, originally laid out by the Western Mutual Land & Improvement Company. The plat of this subdivision filed shows it to be divided into lots and blocks with streets and alleys. It is in form a parallelogram; its length from east to west is about 2892 feet; its width from north to south about 962 feet. It appears that the tracks of the St. Louis & San Francisco Railroad run diagonally across the

Fete v. Foerstel.

west end of the tract or subdivision, so that a tract
962 feet from north to south, extends about 488 feet
from east to west on the south side and about 854 feet
on the north side lies west of the railroad, and the main
body of it, a tract 2404 feet on the south line and 2038
feet on the north line, 962 feet wide, lies east of the
railroad. While the portion west of the railroad
track was subdivided on the plat, it appears by the
testimony that in point of fact there were no streets
dedicated nor lots subdivided in this west end and
that some time after the filing of the plat, the original
owner, the Western Mutual Land & Improvement
Co., by mesne conveyances, had sold off this portion
west of the railroad as acre property, never having
sold any of it as lots and not selling it with any restric-
tions as to building line or otherwise. That is, the part
of the subdivision west of the railroad track was aban-
doned as lots and blocks and residence property.
That portion of it east of the railroad track, and which
comprises about three-fourths of the original sub-
division, and in which portion the lots of plaintiffs
and of defendants are situated, was not only sub-
divided into lots with streets and alleys, but in all the
conveyances which were made by the Western Mutual
Land & Improvement Company of lots in this eastern
part of the subdivision, the following conditions and
restrictions were contained, to-wit:

"It being expressly understood and agreed by
and between the said parties hereto, that as a part
of the consideration for the property therein described,
this conveyance is made subject to the following
restrictions and reservations, viz: That no building
of any kind shall be erected thereon by said grantee
within twenty (20) feet from the street on which it
fronts; that said grantee shall not erect or suffer to be
erected thereon any building or buildings to be used
as wine, beer or liquor saloon, or for the retailing
of any kind of intoxicating drinks, nor shall said grantee

suffer or permit any nuisance of any kind upon said premises; and the said property hereby conveyed shall not be sold or otherwise disposed of by the said grantee, under any other conditions than those hereinabove contained conformably to resolutions adopted by the board of directors of said Western Mutual Land & Improvement Company.

"To have and to hold, the premises aforesaid with all singular the rights, privileges, appurtenances and immunities, thereto belonging, or in anywise appertaining, subject to the above restrictions, unto the said party of the second part, and unto his heirs and assigns forever."

These plaintiffs here and their grantors and Mr. and Mrs. Foerstel, who were seized of an estate in entirely in the lot they purchased, as well as all other owners of lots in this part of Harlem Place east of the railroad tracks, hold under deeds to their several grantors containing the above conditions. In the deed to the Foerstels from one Jungmann, who purchased from the Western Mutual Land & Improvement Co., under a deed with the foregoing conditions, there is this covenant: "This conveyance is made subject, however, to the conditions and restrictions, and easement over the rear six feet for use as an alley, as set out in deed recorded in book 1223, page 303." This deed recorded in book 1223 above referred to, is the deed from the Western Mutual Land & Improvement Company to Jungmann, and it contains the covenants hereinbefore referred to as to restrictions, etc.

The plaintiffs, alleging that the Foerstels, as owners, and Moore, as contractor with them, were about to violate this covenant as to the twenty-foot building line, aver that each of the several plaintiffs claim under deeds from the Western Mutual Land & Improvement Company containing the restriction above set out and that at the time of the laying out of Harlem Place the Western Mutual Land & Improvement

Company was the owner of all the land contained in it, aver that the tract was so situate and the lots in it adjoined each other so as to form a compact rectangular tract or parcel of land, suitable and conveniently located for residence purposes, and that with the general plan and design of forming from said tract or parcel a high-class residence district of said city, and of selling and disposing of lots therein for such purposes, the Western Mutual Land & Improvement Company had platted it and in its deeds had embodied the conditions and restrictions above set out, and that these restrictions and conditions were prescribed and imposed upon each of the lots as an easement or equity for the benefit of each other and for the benefit of the remaining lots in the subdivision subject to similar uniform conditions and restrictions and that all the parties plaintiff and defendants Foerstel have derived their titles thereto from the common source named, subject to and with notice of and bound by the aforesaid building line condition and restriction, and that plaintiffs and their grantors have expended large sums in the improvement of their respective lots by the erection thereon of substantial and expensive residences and other improvements, and that many other owners and holders of lots in the subdivision and their grantors have made like improvements and that the subdivision is now, as it was planned and intended to be, a high-class residence section or district, and that the remaining vacant lots therein are being similarly improved from time to time by the owners thereof, and that in the erection of the residences and of the use of the lots owned by plaintiffs and others, owners and holders of lots in the subdivision, except defendants, the building line condition and restriction has been observed and kept. It is further averred that the Foerstels have violated and are violating the building line condition and restriction, in that they

have begun the erection of a house or building upon the lots, have excavated for the basement and foundation work thereof and have partially built and constructed the foundation work in such a way that the northern or front line or limit thereof is within twenty feet of the south line of said Arthur avenue, upon which said lot fronts, and is distant only ten feet from that line of said avenue, and that defendants propose and intend to finish the house or building upon the foundation with the north wall of it within twenty feet, namely, only ten feet from the line of the avenue. Plaintiffs also aver that although as soon as the violation was brought to their attention, they had notified defendants Foerstel and wife of the fact of the violation and requested them to desist and refrain from further violation of the building line, that defendants have failed and refused to do so and continued the work, the defendant Moore being the contractor in the execution of it under his contract, and by permission and authorization of the Foerstels. Charging that this is a violation of the contract in the deeds with respect to the building line, plaintiffs pray for a temporary injunction and that on a hearing it be made permanent.

In return to an order to show cause, defendants interposed an answer, which, summarized, sets out that the petition does not state facts sufficient to constitute a cause of action; that there is a defect of parties plaintiff and defendant, and that there is no privity of contract or estate between the parties plaintiff and defendant. For further return, denying every allegation of the petition, it is averred that there is no established building line on the property nor an easement therein for the benefit of the parties to the suit, but that the property mentioned in the petition is a cheap class of property, very sparsely settled, unfit for a purely residence district, the streets are not made, nor are there any water, gas or sewer con-

veniences in connection therewith; that the few improvements erected thereon are of a cheap class and character; that none of them are a uniform distance from the street; that many of them are erected within the twenty-foot line; that the improvements were so erected with the connivance and consent of plaintiffs or their grantors; that the few improvements aforesaid are not built according to a uniform grade; that the majority of the owners are anxious to have the improvements defendants contemplate erecting; that defendants have expended about $1000 so far on the building; that the entire improvement is not to exceed $2500, and that the complaint herein is due to a conspiracy of the parties plaintiff because of a personal difference with defendants, and is not made in good faith.

The reply was a general denial. The cause being heard as in equity before the court, resulted in a decree enjoining defendants from proceeding with the erection of the improvement within the twenty-foot line aforesaid, and a mandatory injunction or command was also rendered, to the effect that defendants, within sixty days from its date, remove all that part of the house or building or construction of their house already built or erected prior to the institution of the suit on the lot which is on the south line of Arthur avenue and which extends over the twenty-foot line. From this decree defendants, having interposed a motion for new trial and excepting to its being overruled, have duly perfected an appeal to this court.

In addition to what has heretofore been stated as to the facts in the case, it appeared by the evidence that before selling any of the lots in Harlem Place, the Western Mutual Land & Improvement Company had adopted a general plan or scheme for the improvement of it and had made improvements on it and then commenced selling the lots. The record of the resolution of the board of that company was not in evidence,

as it appeared that the company had gone out of business, but a witness who had been clerk with it for a number of years was permitted to testify, over objections of defendants, that the company had laid this subdivision out under a general plan of making it into a residence district with these building restrictions. It was in evidence that the Western Mutual Land & Improvement Company had sold off all of the lots in that part of the tract east of the railroad track and had conveyed by deeds in printed form, each of the deeds containing the restrictions above set out; that the general plan of the company in laying off this addition was to have a certain building line twenty feet from the street on which the lot fronted, and also restrictions against the sale of liquors or intoxicating drinks and that the company had followed out that plan through all that part of the tract east of the railroad track; that the part of it west of the railroad track, as before stated, had not been sold as lots but that after the company went out of existence and in process of winding up, it had conveyed this western end to a trustee, who had sold it as acre property; that the part of the subdivision west of the railroad was separated from and had no connection with the eastern portion. It was also in evidence that about three-fourths of the lots in this eastern portion are improved, that the improvements mostly consisted of frame buildings, costing from twenty-five to twenty-seven hundred dollars apiece. With the exception of a store or two, it is a residence section. There are no manufacturing interests on any portion of that part of it east of the railroad tracks. There are no stores south of Fyler avenue, which is one of the streets through it, on either side of Arthur avenue, or on either side of Hancock avenue, between Ivanhoe avenue and the Frisco tracks, none on any streets running east and west, referring to the streets east of the railroad track. There is a store at the corner of Fyler and McCaus-

land. The witness who gave the most of the foregoing evidence also testified that the subdivision was laid out about 1888, and that ever since that time he had had personal knowledge of the conditions in that locality; that the lots and blocks were not only platted but were actually laid out; that all of the lots fronted north or south as originally laid out, although the frontage of some few of them has since been changed but as originally laid out they fronted north and south. This witness also testified that while he had never measured the distance of each building from the street, they were fairly uniform. There had been two or three stores in the Place, but one or two had been burned down and at present there is only one. These stores fronted on side streets. The original owner, the Western Mutual Land & Improvement Company, had never conveyed any lots fronting on any side street and those which had been conveyed as fronting on other streets were not on Arthur avenue. Asked on cross-examination if the entire subdivision has been changed by the Western Mutual Land & Improvement Company, this witness said, "No;" that they had never changed anything; that whatever diversion was made was made by subsequent owners. It was admitted by plaintiff's counsel that the restrictions were not uniformly put in each deed in the mesne conveyances from the grantees of the Western Mutual Land & Improvement Company. On redirect examination this witness further testified that up to the railroad tracks, all of the property west of McCausland avenue is residence property and that west of the railroad tracks to the river Des Peres is a brick yard with switches on it and siding of the railroad and that part was never subdivided, was never sold as lots, but sold in bulk by the Western Mutual Land & Improvement Company and no restrictions were ever placed on that part of it. This portion that was sold in bulk was sold along in the early '90's and sold after the filing of the

plat of the property as Harlem Place and as acre property, without any reservation. There were never any streets dedicated nor lots subdivided in that portion west of the railroad track but the entire portion east of the railroad track was used for residence purposes. On recross-examination this witness testified that the streets were laid out and dedicated but were not made, even now there are no made streets there. The property owners, however, have bought macadam and gravel and different kinds of material and the city has done the work of constructing the streets, such as it is. There are sidewalks which were there when the subdivision was laid out, plank walks built on the streets. The sidewalks that are there now have been built by the present owners.

The evidence of defendants showed that in some instances the building line had not been observed. In one instance the building was within sixteen feet and some inches away from the line, the other instance it was twenty-five feet from it, that is they were not built on a regular line but in only one or two cases were they built within the twenty-foot line. Counsel for defendants, offering to show that the streets were in bad condition, the court observed that he did not consider that very material except as showing the general situation and that he supposed that a party "who lives on a dirt street is entitled to have a building line as well as one who lives on a paved street, if he desires it." In answer to this counsel for defendants observed that the allegation in the petition was that this was a building line for the purpose of making a high-class residence district and that if that purpose does not exist to-day, the restriction fails. To which counsel for plaintiffs submitted that a man with a $2500 house is entitled to a building restriction as well as a man with a $25,000 house, to which the court answered, "I think so."

It was in evidence that the average value of the improvements on these lots, that is the cost of the

buildings, was about $3000. There are macadamized roads through this addition or approaching it, the cost of which was partly paid by the adjoining property owners, partly by subscription taken up in the community, and the city did the labor; that is the property owners bought the material and the city laid it for them. There are water pipes and gas pipes on most of the streets; where built up to any extent, they are in place; but there are no sewers.

The defendant Foerstel, testifying for himself, stated that when he saw the clause in his deed he did not understand it as covering anything but an alley. There was also introduced in evidence by the defendants, papers containing signatures of a number of property owners in the subdivision of Harlem Place, consenting to the improvement now being made by the Foerstels and waiving any and all objection that they may have to it. None of these plaintiffs had, however, signed these. There was also introduced in evidence by defendants an affidavit made by one of the plaintifis to the effect that he resides on one of the lots in the subdivision and when notified of the building restriction in it, had purchased on the faith of it and in reliance on the building line; that shortly after he had purchased, one Myers, the owner of a lot in the block, excavated for the foundation of a store on the lot, which excavation extended to the line of the street; that he notified Myers of the building restriction and called on him to observe it by building his store twenty feet back from the line and that Myers desisted from the work for awhile but afterwards erected the store a distance ten feet from the line. The affiant was a newcomer in St. Louis, not acquainted with his neighbors, not financially able to prosecute an injunction against Myers and for the reason stated the store was erected ten feet back from the avenue over his protest and objection. This was introduced by defendants under their plea of estoppel. In the

same line was some evidence to the effect that one of the plaintiffs had attempted to bargain with defendants for dirt out of the excavation.

Photographs and a map or plat of the subdivision were introduced and while the photographs are before us the plat is not.

This is substantially the evidence in the case. Reading it and considering it in connection with the cases which have been before this court with reference to building restrictions, we see no reason to differ from the conclusion arrived at by the learned circuit judge. We hold that this was a subdivision laid out on a general plan of restrictions, among which was the reservation of a building line and that this was a charge that followed on all the lots in Harlem Place east of the tracks of the railroad. The fact that the original owners of the subdivision had laid the place off so as to take in property west of the railroad tracks and had subsequently abandoned that portion of it west of the tracks and sold it as acre property, cannot and does not affect the rights which the purchasers of the lots in the subdivision lying east of the track acquired by their deeds. As said by the trial court, the fact that the improvements put upon it were not of an excessive valuation or very costly, does not in any manner depart from the plan of making this a high-class residence district. High-class residence dstricts are not necessarily measured by the amount of money spent in the improvement. The real spirit and meaning of these restrictions as to a building line were for the purpose of making this a pleasant residence district, suitable for persons who chose to settle there and not have their houses or those of their neighbors built out to the street line. The twenty-foot reservation tended to beauty and comfort; made the homes attractive and habitable. Nor did they desire to be surrounded by liquor houses and dramshops.

As appears in the statement we have made, defendant introduced in evidence papers signed by a large majority of the property owners of Harlem Place, consenting to the improvement being made by defendants and waiving any and all objections they may have thereto. But confessedly none of the plaintiffs signed these papers and they are not concluded by the acts of others. It may also be said that the obtaining and using and introduction of this by defendants in some degree confesses the necessity of consent.

The principles governing this class of cases has been laid down in very many cases by our court and by the Supreme Court. For the purposes of this case, it is sufficient to refer to that of Doerr v. Cobbs, 146 Mo. App. 342, 123 S. W. 547, as a correct statement of the law. There it was held that the covenants did not inure to the benefit of all. But applying the rules there so well announced to the facts in the case at bar, we hold that here they do. Our Supreme Court, in King v. St. Louis Union Trust Co., 226 Mo. 351, 126 S. W. 415, is authority upon the question of notice which these defendants must be charged to have had of the restrictions on their lot.

The judgment of the circuit court is affirmed. *Nortoni* and *Caulfield, JJ.,* concur.