SCHNEIDER and others, Respondents, vs. ECKHOFF and another, Appellants.

*November 20, 1925—January 12, 1926.*

*Covenants: Restrictive provisions in deeds: Prohibiting use of property for business purposes: Building lines: General scheme or individual benefit to grantor: Enforcement in equity: Laches: Form of decree requiring removal of building.*

1. A provision in a deed prohibiting the use of the property conveyed for the manufacture or sale of intoxicating liquors, or for livery, boarding, or sale stables, or any business which might be detrimental to the interests of a "first-class residence neighborhood," but not restricting the character, cost, or architectural design of buildings erected on the property, is not intended to exclude the conduct of all lines of business, especially where the property was located in close proximity to a large industrial area.  p. 555.

2. Doubtful language used in a restriction in a deed should be resolved in favor of the free use of the property for all lawful purposes by the owner of the fee.  p. 556.

3. The facts in this case are *held* to warrant the conclusion that the original grantors, by inserting a restriction in a deed establishing a uniform building line, adopted a general scheme or plan, not only for the benefit of the grantors' remaining property but also for the benefit of the various grantees; and such a restriction, when manifested by a clearly expressed intention, should be enforced by a court of equity.   pp. 557, 558.
4. Where the construction of a building on one of the parcels conveyed was begun by defendant on August 19, 1924, and it was not apparent until August 30th that the building would violate the restrictions, at which time defendant was notified that compliance with the restrictions would be insisted upon, an action commenced on September 25th was not barred by laches.   p. 558.
5. The decree requiring the removal of the building should only have required the removal of that portion which violated the building-line restriction, and should have directed compliance with all convenient speed within a limited time, giving leave to the defendants to apply to the court for additional time in the event of the occurrence of an unavoidable situation. p. 559.

APPEAL from a judgment of the circuit court for Milwaukee county; JOHN J. GREGORY, Circuit Judge.   *Modified and affirmed.*

This is an appeal by the defendant from a judgment granting a mandatory injunction requiring the defendants to remove a building constructed in violation of certain restrictions.

For the appellants there was a brief by *Lenicheck, Boesel & Wickhem,* attorneys, and *Frank T. Boesel,* of counsel, all of Milwaukee, and oral argument by *Mr. Boesel.*

*Vincent D. Hennessey* of Milwaukee, for the respondents.

DOERFLER, J.   It appears that the parties are the owners of the following real estate in the Continuation of Merrill Park, in the Sixteenth ward of the city of Milwaukee: *Schneider* and wife, lot 7 in block 11; *Kiefer* and wife, an equitable interest in the north 30 feet of the south 60 feet of lots 5 and 6 in block 12; *Satorius* and wife, lot 4 in block

12; and *Eckhoff,* the north 60 feet of lots 5 and 6 in block 12; that the defendant *Hercules Construction Company* is a Wisconsin corporation and the contractor for the defendant *Eckhoff* in the construction of the building hereinafter referred to; that in the year 1885 Mary E. Merrill and the executors and trustees of the estate of S. S. Merrill, deceased, were the owners of the property included in said Continuation of Merrill Park, and in that year caused the same to be platted and the plat duly recorded in the office of the register of deeds for Milwaukee county; that the lands included within said plat are bounded on the south by St. Paul avenue, on the east by Thirtieth street, on the north by Clybourn street, and on the west by Thirty-fifth street; that the subdivision embraces five blocks, each containing twenty lots; that when said subdivision was platted the owners thereof conceived a general plan or scheme pursuant to which the lots were to be sold with certain restrictions, with the idea of enhancing the value not only to the then owners, but to all subsequent purchasers, their successors and assigns. The proposed restrictions affected, first, the use of the premises, and second, the establishment of a uniform building line. The proposed building-line restrictions were as follows: on Clybourn street, no nearer than fifty-five feet from the center line of such street; on St. Paul avenue, no nearer than fifty-five feet from the center line of said avenue; on Thirtieth, Thirty-first, Thirty-second, Thirty-third, and Thirty-fourth streets, no nearer than forty-five feet from the center line of the respective street; and on Thirty-fifth street, no nearer than forty-eight feet from the center line of said street. The general plan outlined to effectuate the above scheme was manifested in part by the drafting and printing of a sufficient number of blank deeds, which were complete in all respects excepting only that they required the insertion of the particular data necessary for the execution of a specific deed. Such insertions consisted of the name or names of the grantee or grantees, a description of

the property, the building line, etc. All of these deeds contained the following provision (the insertions above referred to omitted):

"Provided, however, that it is mutually understood and agreed by and between the parties hereto that this deed is executed and delivered upon the express condition that the front line of any building or buildings erected or rebuilt or moved upon said premises shall be no nearer the center of —— street than —— feet, and also upon the express condition that said premises, and no part thereof, shall at any time be used or suffered to be used for the manufacture, sale, or other disposal of spirituous, malt, brewed, vinous, ardent, fermented, or intoxicating liquors, drinks, or beverages, nor shall a saloon be kept thereon, nor any building in which any person whomsoever shall vend, sell, deal, or traffic in any spirituous, malt, brewed, vinous, ardent, fermented, or intoxicating liquors, drinks, or beverages, and that *said premises shall not, nor shall any part thereof, be used* or kept by any person or persons whomsoever for a livery, sale, or boarding stable, or *for any business detrimental to the interest of a first-class residence neighborhood;* and upon the happening or suffering of either, any, or all of the aforesaid events or contingencies this deed shall become forfeited, and the premises herein described, and all the rights herein conveyed, shall at once revert to and revest in and become the property of said first parties, their successors or assigns (without any declaration of forfeiture or act of re-entry, and without any other act by first parties to be performed, and without any right of said second party to reclamation or compensation for moneys paid or improvements made), as absolutely, fully, and perfectly as if this deed had never been made."

All the purchasers of said lots embraced within said subdivision took the same from the original owners with notice of said restrictions, and all of the parties hereto had actual notice thereof and of said general scheme, and all of the lots in said subdivision have been sold. The deed to the defendant *Eckhoff* from his immediate grantor was given expressly subject to said restriction. The defendant *Eck-*

*hoff* threatened to build and is building a structure on said premises owned by him which is nearer than fifty-five feet from the center of Clybourn street, to wit, forty feet from the center of such street, and which is designed and intended to be used in part for residence purposes and in part to house stores, offices, a barber shop, and a drug store.

Plaintiffs herein contend that the restrictive provisions above set forth prohibit the erection of a building to be used in part for business and in part for residential purposes; that to comply with these restrictive provisions residences alone can be built, and such residences can be used solely for residential purposes. On the other hand, the defendants concede that the premises cannot be used for all business purposes; that certain classes of business are specifically prohibited, but that such prohibited classes do not include stores, offices, barber shops, and drug stores.

This subdivision is located a short distance north of the Menominee Valley, in the city of Milwaukee. Along the northerly end of this valley is located the main line of the Milwaukee road, used for the transportation of freight and passengers through this state and as far west as the Pacific coast. Immediately to the south of the main line of the road are located the extensive shops of the railroad, wherein are employed thousands of mechanics and workmen engaged in the construction and repair of cars and engines. The property known as Merrill Park and the subdivision herein referred to were originally owned by S. S. Merrill, the superintendent of the road, and these properties were platted and placed upon the market by his widow and his executors and trustees with the view of affording convenient locations for homes to those employed in the railroad shops and the industries in the valley. In fact, the platting of the property, the location of the railroad shops, and the building of the main line in close proximity to this property were almost contemporaneous. It will thus be seen that Merrill Park

and the subdivision herein referred to are located in close proximity to a large industrial area. Therefore, when the expression "first-class residence neighborhood" was used in the various deeds, it was not intended that a first-class residence neighborhood should be created such as exists along what is known as the "Gold Coast" of many of our larger cities, but, on the contrary, a first-class residence neighborhood, for the employees of the Milwaukee shops and of the industries contained in the valley.

No provisions were inserted in the deeds restricting the character, cost, or architectural design of the buildings. The prohibited objects aimed at were the manufacture and sale of intoxicating liquors. In other words, they were primarily aimed at the saloons; and realizing that the use of the property for certain other purposes might be detrimental not only to the interests of the grantors but also to the interests of the grantees, their successors and assigns, livery, boarding, and sale stables were included in the prohibition; and in order to make certain that the specified list be not deemed all-inclusive, it further excluded *any business which might be detrimental to the interests of a first-class residence neighborhood.*

From the language used in the restriction but one logical inference can be drawn—that it was not intended to exclude the conduct of all lines of business upon this property. The subdivision in question when it was platted, and even up to the present time, is located a considerable distance from the retail shopping and business districts of the city of Milwaukee, and it is therefore logical to assume that the original owners, when they created this plat, intended that a business which is conducted for the purpose of supplying the immediate needs of the residents shall not be prohibited. In any event, however, if it had been the intention of the original owners to exclude all business, such intention could easily and readily have been expressed. At most, it may be

said that the language used in the restriction is doubtful in its meaning, and in such a case all doubt, under the general rule, should be resolved in favor of the free use thereof for all lawful purposes by the owner of the fee. See numerous cases cited and digested in the annotations in 18 A. L. R. 451. See, also, *Roberts v. Gerber,* 187 Wis. 282, 202 N. W. 701.

Plaintiffs' counsel on this branch of the case relies upon the decision in *Boyden v. Roberts,* 131 Wis. 659, 111 N. W. 701. The restriction in the *Boyden Case,* in express language, prohibited the property involved to be occupied, sold, or used for hotel, club, or camping purposes, etc., and in that case it was held that, under the express language of the agreement, clubs and club houses which it was the intention of the plaintiff to organize and construct were prohibited. The physical situation and the surrounding facts and circumstances in the instant case are materially different from those which existed in the *Boyden Case,* and the latter case, therefore, can furnish but little aid to the court in the construction of the restrictions contained in the instant case.

We now come to that portion of the restriction which establishes a uniform building line. Such restrictions have of recent years become quite common. They not only have a substantial practical value in furnishing light and air, but also have an æsthetic value by creating a pleasing effect to the eye. That they enhance the value of the property cannot be doubted. The serious question involved on this branch of the case consists of whether or not the evidence warrants the conclusion that the original grantors adopted a general plan or scheme which was designed not only for the benefit of the grantor's remaining property but also for the benefit of the various grantees of the lots or parcels sold and their successors or assigns. In many cases reported in the books, the general plan becomes apparent from

an inspection of the original plat. In other instances it results from an agreement duly executed and recorded and which attaches to the land and binds all subsequent purchasers. In the instant case, if it be held that a general scheme or plan was adopted, it must follow from the execution of the various deeds containing the restrictions to the respective purchasers. It is conceded herein that all of the deeds from the original grantors contained these restrictions, and the latter were uniform. While it must be admitted that the grantor and his unsold property were undoubtedly benefited by the insertion of these restrictions, it can also be readily inferred that these restrictions were of material benefit to the respective grantees and that they entered into the consideration of the purchase, and, in fact, the insertion of these restrictions in each particular deed furnished the best evidence conceivable that they were intended not only for the benefit of the grantor's remaining property but also for the benefit of the various grantees. Whether or not these restrictions were intended for the benefit of the grantees is largely a matter of intention, and this intention can be gathered not only from the nature and form of the deeds themselves but from all the surrounding facts and circumstances. Pursuant to the weight of authority in this country, the restrictions contained in the deeds in question are strong evidence of a general plan and scheme, and the learned circuit judge so found. Numerous authorities supporting this view will be found in 37 L. R. A. N. s. pp. 623 to 629, inclusive, and we adopt the views expressed therein. We call especial attention to *Ball v. Millikin,* 31 R. I. 36, 76 Atl. 789, 37 L. R. A. N. s. 623; *Fete v. Foerstel,* 159 Mo. App. 75, 139 S. W. 820; *Landsberg v. Rosenwasser,* 124 App. Div. 559, 108 N. Y. Supp. 929; *Morrow v. Hasselman,* 69 N. J. Eq. 612, 61 Atl. 369.

The instant case differs from those where the grantor owns a tract of land and conveys but one or a few pieces

of property with restrictive covenants, from which it becomes clear, in view of the surrounding circumstances, that the original owner restricted the property conveyed solely for his own individual benefit. In this case all of the property was sold under conveyances containing uniform restrictions. Even the last deed contained these restrictions, which fact is of evidentiary value to the effect that the restrictions were at least in part intended for the benefit of the grantees, their successors and assigns. The provision for a uniform building line in and of itself is largely persuasive to rebut the idea that the restrictions were for the sole personal benefit of the original grantor, but is strongly indicative of a general scheme or plan which will act as a strong talking point in the sale of property and which has a tendency to stimulate purchases. In other words, a uniform building line enters into the consideration not only of the grantors but also of the grantees. Such restrictions, when manifested by a clearly expressed intention, should be enforced by a court of equity. While unquestionably the original owners of this property were actuated by selfish motives, which can also be said to a large extent with respect to the purchasers, the idea of a general plan whereby each purchaser or owner surrenders an interest or easement in his own property for the benefit of others residing in a particular area or community is highly laudable. It is in accordance with the modern and progressive ideas involved in the zoning ordinances. It creates a common community interest. It acts as a check to individual advantage and greed. It should therefore be encouraged, if possible, and not discouraged.

Defendants' counsel argue that the plaintiffs are guilty of laches, and should therefore be denied relief. On August 19, 1924, construction of the building by the defendant *Eckhoff* was begun. On August 30th, when it became apparent that the building restrictions would be violated, notice by letter was given him, which he failed to heed. Prior

to that time it was difficult to determine whether a violation was contemplated. The defendants ignored the notice and continued in their operations. They did not even consult an attorney until after September 19th, when they were again notified by letter that the plaintiffs would insist upon a compliance with the restrictive covenants. The action was promptly commenced on September 25th. On this state of facts the court held that the plaintiffs were not guilty of laches, and we approve of its findings in that respect.

By the judgment of the court the defendants were restrained from continuing the erection and maintenance of the projected building on the property or any part thereof, and were ordered and directed to remove the building, or so much thereof as has already been erected, within sixty days from the date of the service of a copy of the judgment. In view of what has heretofore been held, the relief granted was too broad. The mandate of the court should have required the removal of that portion of the building only which was constructed in violation of the building-line restriction. That portion of the mandate requiring the removal of the building within a period of sixty days is harsh, and an order directing the removal with all due and convenient speed, limiting the time for removal, would have been more advisable and in accordance with equitable doctrine, giving leave, by the very terms of the mandate, to the defendants to apply to the court for additional time in the event of the occurrence of an unavoidable situation. The relief granted, therefore, should be in accordance with what has been heretofore said.

*By the Court.*—The judgment of the lower court is affirmed in part and modified in part, and the cause is remanded with directions to enter judgment in accordance with this opinion. No costs to be allowed to either party, except clerk's fees to be paid by appellants.