CITIES SERVICE OIL COMPANY OF WISCONSIN, Respondent, vs. KUCKUCK and another, Appellants.

*April 29—June 2, 1936.*

634

For the appellants there was a brief by *Donovan, Gleiss & Goodman* of Tomah, and oral argument by *T. P. Donovan.*

For the respondent there was a brief by *McCaul & McCaul* of Tomah, and oral argument by *William R. McCaul.*

WICKHEM, J.   The lease involved in this action was executed on July 14, 1931.   On that day defendants were the owners of certain lots in the city of Tomah, Wisconsin.   The plaintiff is a corporation engaged in the production, refining, and marketing of petroleum products.   As a part of this business, it conducts filling stations for the retail sale of its products.   By the terms of the lease, which was entered into before any service station or equipment had been erected on the premises, defendants leased to plaintiff the premises involved.   The rent was set at $1 per year.   The term of the lease was five years from the 15th day of July, 1931.   The lessors agreed, (1) to pay all taxes on the premises and to keep them in good repair; (2) to permit the lessee upon the termination of the lease to remove any equipment installed upon the premises by it; (3) to replace at their own expense equipment owned by them which has become worn out through ordinary use or broken or destroyed through no fault of the lessee; (4) to save harmless the lessee from any claims for liability and all loss or damage to persons or property occasioned by leakage or explosion of or from equip-

ment furnished and installed by the lessee, and to release the lessee from all liability for damages from such causes occurring through imperfections in such equipment or appliances; (5) to permit the lessee on paying all rent to have, hold, and enjoy the demised premises for the term described; (6) during the term of the lease personally to operate and manage the service station, and to sell only the products handled and dealt in by the lessee; to pay cash on delivery for such products; and to keep on hand an adequate supply of these products, the lessee to be the sole judge as to the adequacy of supply, and as to whether the lessors are conducting the station in good faith. In case of breach, the lessee was given the option either to remove its equipment and cancel the lease or to take immediate possession and operate the station by its own agents and employees. In the latter case, the lessors agreed peaceably to surrender the premises to the lessee, and in that contingency, the lessee agreed to pay the lessor a rental of $20 per month. The lessee reserved the right to terminate the lease at any time on ten days' written notice of its intention so to terminate. In addition to the rental, the lessee agreed, (1) to install certain described equipment for the vending of oil and gas; (2) to return to the lessors the premises and equipment belonging to the lessors in as good condition as at the date of the lease, ordinary wear and tear excepted; (3) to sell to the lessors all its products required in the conduct of the service station at prices not less favorable than those made and granted to other similar customers in the vicinity. A mere glance at the terms of this document indicates its peculiarity. It purports to be a lease, but the rent is purely nominal, and while the document recites that the premises are demised to the lessee, it provides for occupancy by the lessors until a breach of its terms by the latter and an election by lessee to take possession. It is a contract whereby the owners of the

land are committed to devoting the property to the conduct of a gas and oil station, furnishing the building and some of the equipment, and being furnished with other equipment by the lessee under an agreement that the lessors will keep possession, manage the station, and handle exclusively the products of the lessee. Some time after the execution of the lease, lessors erected a building upon the premises and installed the equipment requisite to discharge its obligations. This represented an investment of some seven or eight thousand dollars. The lease was twice modified in 1931 to reduce the amount of equipment to be furnished by the lessee and to reduce the allowance on gas to one-half cent per gallon. On April 3, 1934, defendant signed an agreement accepting certain discounts in lieu of rent or rents and discounts theretofore provided. Upon adoption of the NRA code, plaintiff operated thereunder, and in the summer of 1933, notified defendants that because of this code it could no longer pay the $1 a year rent provided in the lease and offered defendants the privilege of handling other oils than those sold by plaintiff. Defendant thereupon without any objection from plaintiff handled other oils, but continued to sell plaintiff's gas exclusively until May, 1935. On February 2, 1935, defendant George Kuckuck notified plaintiff that he would discontinue its products and operate his station independently at the expiration of thirty days. In March, an order was issued by the NRA code authorities authorizing the termination on thirty days' notice of leases such as that involved here, and declaring that failure to accept such notice would constitute unfair competitive practice and a violation of the code. At the expiration of the thirty days defendant proceeded to remove plaintiff's equipment, signs, etc., and ceased to handle plaintiff's products other than gas, discontinuing the latter on May 9, 1935. On June 5, 1935, plaintiff served notice of election to take possession of the station and op-

erate the same with its own agents and to pay $20 a month as rental therefor. Upon defendants' refusal to surrender possession, this action was commenced.

The judgment restrains defendants from entering the lands described in the lease and from obstructing or resisting plaintiff's possession of same or its conduct of the oil station. While prohibitive in form, it was mandatory in effect, since defendants were in actual occupancy, and the effect of the judgment was to compel a surrender of the premises to plaintiff.

The first contention of the defendant is that the lease lacked mutuality with respect to right of enforcement since it was terminable only at the will of plaintiff, and that there is consequently no mutuality of remedy. The doctrine that equity will not grant specific performance to one party unless the contract is so framed that upon a breach the same remedy could be decreed in favor of the other party to the contract has considerable support in the cases, but it has been very severely criticized, and Professor Langdell in 1 Harvard Law Review states:

"The rule as to mutuality of remedy is obscure in principle and in extent, artificial and difficult to understand and to remember."

See also 3 Williston, Contracts, p. 2554 *et seq.;* 6 Page, Contracts (2d ed.), p. 5843, § 3320; 20 Mich. Law Rev. 285; 16 Columbia Law Rev. 443.

In *Butterick Publishing Co. v. Rose,* 141 Wis. 533, 124 N. W. 647, the court said:

"Appellant next contends that the contract is void for want of mutuality. In support of such claim it is urged that the plaintiff is seeking by injunction to enforce the negative covenant in the contract not to sell the goods of other manufacturers, that specific performance could not be enforced by defendant should plaintiff refuse to perform, and that

unless there is mutuality of remedy as well as of obligation equity will not interfere. It has already been said that there is mutuality of obligation under this contract. It is not necessary that there should also be mutuality of remedy in order to enable the plaintiff to enforce such a negative covenant as is found in the contract sued on."

We think there is no merit in defendants' contention with respect to mutuality of remedies.

It is next contended to be the rule that where a contract may be terminated at the will of one party equity will not enforce specific performance at his instance, but he will be relegated to his remedy at law, citing *Fed. Oil Co. v. Western Oil Co.* (C. C.) 112 Fed. 373; *Berry v. Frisbie,* 120 Ky. 337, 86 S. W. 558; *Sturgis v. Galindo,* 59 Cal. 28; *Rust v. Conrad,* 47 Mich. 449, 11 N. W. 265; *Maynard v. Brown,* 41 Mich. 298, 2 N. W. 30; *Solomon v. Wilmington Sewerage Co.* 142 N. C. 439, 55 S. E. 300; *Heard v. Huston Gulf Gas Co.* (C. C. A.) 78 Fed. (2d) 189; *Electric Management & Engineering Corp. v. United P. & L. Corp.* (C. C. A.) 19 Fed. (2d) 311; *Watford Oil & Gas Co. v. Shipman,* 233 Ill. 9, 84 N. E. 53, 57; *Southern Exp. Co. v. Western North Carolina R. Co.* 99 U. S. 191; *Miami Coca-Cola Co. v. Orange Crush Co.* (C. C. A.) 296 Fed. 693.

That the rule as stated by the defendant has considerable support in the authorities is undeniable. We think, however, that the following comment in 3 Williston, Contracts, p. 2567, is sound and indicates the principle which should govern cases of this sort:

"Equity will not enforce a contract specifically which the defendant has a right under the contract to terminate immediately, as a contract to enter into a partnership, or lease, terminable at the will of the defendant. Partly from confusion with this principle, partly for alleged lack of mutuality, specific performance has been refused in a number of cases because the plaintiff had a power given him under the contract to terminate it after a certain time or on giving a certain

notice, or on paying a trifling sum of money, and no such power was given the defendant. There seems no foundation for any such broad rule. Doubtless such a contract may be so harsh or one-sided that equity should decline to enforce it and this explains some of the decisions; but the mere fact that one party to a contract is given a right which the other is not is no reason for refusing equitable relief. . . ."

Assuming that this action is to be treated as one for specific performance, the question is whether this contract, considering all its terms, is so harsh and one-sided that equity should decline to enforce it, at least under all of the circumstances here presented. It is claimed that this is not an action for specific performance, but merely one to enjoin trespass by defendants upon premises to which plaintiff was entitled by the lease to possession. The remedy of injunction has been recognized as a proper device to specifically enforce negative promises by enjoining breach of them, and in the case of a contract consisting wholly of negative stipulations, complete specific performance may be granted by injunction. *E. L. Husting Co. v. Coca Cola Co.* 205 Wis. 356, 237 N. W. 85, 238 N. W. 626. It is pointed out by Mr. Williston in 3 Williston, Contracts, p. 2573, that the fundamental basis for granting relief by injunction is the same as for granting affirmative relief. It can hardly be disputed that the injunction in this case serves specifically to enforce the contract by compelling the defendants to let plaintiff into the occupancy of the premises. As heretofore stated, it is virtually mandatory in the light of the facts. The same considerations which would cause a court of equity to deny conventional specific performance where the contract is harsh or one-sided, or where the results of enforcing this remedy would be unduly harsh and oppressive, should be and are applicable in cases where the relief sought is an injunction directed against a breach of the contract. Hence, the question upon this appeal is whether this contract is so one-sided that under all the cir-

cumstances it should not be enforced by injunction. It is our conclusion that this question must receive an affirmative answer.

In consideration of a nominal rent, which was later waived by a modifying agreement, the furnishing of certain items of vending equipment, and an agreement on the part of plaintiff to sell gasoline and other products to defendants at the same price as these were, sold to other retailers in the vicinity, defendants agreed to devote property representing an investment of upwards of $7,000 exclusively to the sale of plaintiff's products. By the terms of the contract, defendants agreed to submit entirely to the judgment of plaintiff the decision whether their conduct of the oil station was a good faith compliance with the terms of the contract, and, in case of an adverse determination by plaintiff, to surrender the premises for the balance of the term at a rental which is hardly more than nominal, considering the improvements made on the premises. The contract subjected defendants at any time upon ten days' notice to the possibility of a termination of the contract by plaintiff without cause. If the premises are now surrendered and the business and possession and occupancy of defendants interrupted, there will still reside in plaintiff the right to terminate upon ten days' notice.

It appears to us that this contract is so harsh and one-sided as to fall within the rule heretofore stated, and that its enforcement by injunction will be unduly oppressive to defendants. See *Menasha v. Wisconsin Central R. Co.* 65 Wis. 502, 27 N. W. 169; *Mulligan v. Albertz,* 103 Wis. 140, 78 N. W. 1093; *Woldenberg v. Riphan,* 166 Wis. 433, 166 N. W. 21; *Droppers v. Hand,* 208 Wis. 681, 242 N. W. 483. Further than this, there is no showing that the damages caused by defendants' breach are difficult of ascertainment, or that defendants are insolvent or otherwise unable to re-

spond in damages for the breach. At the time the judgment was entered, less than a year of the term of five years of the lease was unexpired. Under all these circumstances, we conclude that the trial court abused its discretion in granting plaintiff injunctive relief, and it follows that judgment must be reversed.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss plaintiff's complaint.