Spankus, Appellant, vs. West, Respondent.

*June 4—June 22, 1936.*

For the appellant there were briefs by *Hennessey & Glick,* attorneys, and *Vincent D. Hennessey* of counsel, and oral

argument by *Vincent D. Hennessey* and *J. C. Ottenstein,* all of Milwaukee.

For the respondent there was a brief by *Olwell & Brady* of Milwaukee, and oral argument by *Bernard V. Brady.*

ROSENBERRY, C. J.   For a number of years prior to 1928, the Magnesia Products Company had been engaged in the business of manufacturing and selling bird foods and bird products.   The defendant was its president and the plaintiff an employee.   The capital stock of the company was owned by a corporation known as Lake Shore Stone Company. In 1923 the defendant made an arrangement with the Lake Shore Stone Company pursuant to which he acquired one half of the capital stock of the Magnesia Products Company or one hundred seventy-five shares and the plaintiff a like amount for an aggregate price of $7,500.   The defendant continued as president and plaintiff was made secretary and treasurer and was actively in charge of the management of the company, which was financed principally through the efforts of West.   By 1928 the profits of the business had become substantial.   The defendant was then seventy years of age.   The plaintiff was a much younger man and ambitious to become the sole owner of the company.   The arrangement was reduced to writing by West and is set out in the margin.[1]

---

[1] "This agreement made this 14th day of March, 1928, by and between George A. West of Milwaukee, Wisconsin, party of the first part, and Harry O. Spankus, of Shorewood, Wisconsin, party of the second part.

"Witnesseth: That the party of the first part hereto for and in consideration of $1 to him in hand paid, and of other considerations to be paid and performed, as hereinafter set forth, does hereby sell to said party of the second part, one hundred and seventy-five shares, par value, of the stock of the Magnesia Products Company, being his one-half interest in the stock of said company, upon the following conditions:

"The purchase price shall be $17,500, payable on or before ten years from January 1, 1928,—stock to be delivered after the party from the first part has received in salary and dividends, from January 1, 1928, in the aggregate, the sum of $50,000, and after full

From the time the plaintiff had acquired an interest in the corporation he and the defendant had drawn equal salaries as officers of the corporation. In addition to this salary the plaintiff had drawn $60 per week "as expenses" which was really intended as compensation for services rendered by the plaintiff as manager. After the arrangement entered into in March, 1928, the business was continued as before,—in the years in which dividends were declared the plaintiff and de-

payment of the purchase price. In case such receipts by said first party do not amount to $50,000 by January 1, 1938, the difference between what is so received and $50,000 shall become part of the purchase price and added to $17,500. In case salary and dividends received by said first party, from January 1, 1928, exceed $50,000 by January 1, 1938, such excess shall reduce the purchase price in such amount. After said January 1, 1938, any part of the real purchase price remaining unpaid shall be payable on or before four years from that date at six per cent semiannual interest—and when the aggregate of salary, dividends and purchase price received by said first party shall equal $67,500 of principal, as aforesaid, with any accrued interest that may be due, said stock shall be surrendered at once. In the meantime, such stock shall remain in the hands of the party of the first part unconveyed.

"It is also agreed that the allowance for expenses of Harry O. Spankus, manager, amounting to sixty dollars per week, shall remain unchanged until final payment of said stock.

"It is further agreed that the present arrangement with the second party for the handling of birds shall remain unchanged during the life of this contract.

"It is also agreed that in case of the death of the first party, hereto, during the life or existence of this agreement, his heirs, executors, administrators or assigns shall have no voice in the policy or management of the affairs of the Magnesia Products Company, the same to be left entirely to said second party during the life of this agreement.

"It is understood and agreed that this agreement may be canceled by said second party hereto, his heirs, executors, administrators or assigns, at any time before January 1, 1938, on written notice to said first party, his representatives or assigns, which notice shall operate as a retransfer of any right, title or interest that said second party may have acquired by virtue hereof.

"To the above we mutually agree and the same to our heirs, executors, administrators and assigns.

"In presence of        "Geo. A. West     [Seal]

  "M. W. Sheldon        "Harry O. Spankus [Seal]

  "Helen McNamara."

fendant received equal amounts. By virtue of salary and dividend payments the defendant received for the period ending December 31, 1935, an aggregate sum of $67,250. The plaintiff received a like sum for salary and dividend and in addition thereto $21,840, being "expenses" or manager's compensation. Plaintiff continued to conduct the bird business mentioned in the contract, but there was no way of ascertaining the real profits of this bird business.

On December 26, 1934, the defendant gave the plaintiff notice in writing to the following effect:

"My written offer made by reason of the instrument dated March 14, 1928, signed between me as first party and you as second party, is hereby revoked and withdrawn as of the time of the delivery of this notice to you."

On April 3, 1935, the plaintiff tendered the defendant $2,580 in full performance of the contract, demanded delivery of the stock, which demand was refused, and this action was begun.

Although the answer admitted that the defendant had received from the company in salary and dividends amounts totaling $67,250 as alleged in the complaint, upon the trial the plaintiff for some reason undertook to show that the amount received by the defendant as salary was in fact dividends; that it was made to take that form in order to diminish the amount of income taxes for which the company would be liable, and that in some way the amount so received was the real consideration for the contract. The trial court was of the view that the facts thus established by the plaintiff presented—

"a series of deliberately intended and material transgressions of the state and federal income tax statutes. . . . The corporate income tax returns he [plaintiff] caused to be made for the corporation during the years in question (1928–1934) were fraudulent returns, for the purpose and with intent to evade the lawful corporate income taxes, state and federal,

and constituted material violations of penal statutes enacted to subserve an important public policy; and plaintiff's claim of performance of the contract was directly through the medium of payments evidenced by the very instrumentalities used, according to his showing, as the basis and means of perpetrating such illegal transactions, and the funds so paid were in part the product of such illegal transactions."

The court further found that the cancellation clause contained in the contract prevented mutuality of obligation; that the contract operated merely as a continuing offer of the defendant, which offer defendant had the right to cancel or withdraw; that the principle of substantial performance had no application to the facts in the case, and that upon the evidence of the case there was no basis of a claim to estoppel or waiver. If the trial court is sustained on any one of the grounds on which it entered judgment, it becomes unnecessary for us to give further consideration to other questions raised on appeal.

It is the contention of the defendant that the contract on its face shows a lack of consideration, and such lack of mutuality of obligation (consideration) as renders the contract unenforceable. The defendant relies upon *Squier v. Harnischfeger* (1922), 177 Wis. 89, 186 N. W. 409, as conclusive upon his contention. He contends that from the evidence and findings of the court it appears clearly under the doctrine of that case that the contract in the present case is, (a) without any legal consideration; (b) lacks mutuality of obligation; (c) the defects are not cured by the presence of a seal; (d) that there is not adequate consideration to support specific performance; (e) that the effect of the assignment of stock was not to vest any title thereto in the plaintiff, but the contract remained an option contract. The plaintiff meets this contention of the defendant with the claim that the agreement of March 14, 1928, is valid, (1) as a contract; (2) as an irrevocable option; (3) as an offer accepted by

performance; and (4) that the defendant is estopped to claim the offer revocable by his conduct in continuing the performance of the contract.

The contract cannot be said to be wholly without consideration. The recital contained in the contract is:

"The party of the first part hereto for and in consideration of $1 to him in hand paid, and of other considerations to be paid and performed, as hereinafter set forth, does hereby sell," etc.

This is an acknowledgment of a nominal consideration and sufficient to support the contract. *Singer v. General Acc., F. & L. Assur. Corp.* (1935) 219 Wis. 508, 262 N. W. 702.

The contract in this case being executory, the fact that it was under seal did not prevent the true consideration from being shown. *Cities Service Oil Co. v. Kuckuck* (1936), 221 Wis. 633, 267 N. W. 322. However, where the contract acknowledges receipt of a sufficient consideration, the receipt of that consideration cannot be contradicted for the purpose of defeating the contract. *Jost v. Wolf* (1906), 130 Wis. 37, 110 N. W. 232. While the plaintiff presents many contentions, his principal contention is that there has been part performance of the contract; that the defendant has accepted the benefits of such performance and may not for that reason withdraw from the contract. It is apparent from the undisputed evidence in the case that the defendant has never received anything from the plaintiff by way of part performance. What the defendant has received is salary and dividends which he would have received if no contract had ever been made. The plaintiff has never paid anything to the defendant according to the findings of the trial court. It is argued that he has had the benefit of the plaintiff's·valuable services in the interest of the company; that these services have been continued in reliance upon the contract, and therefore there has been part performance. The plaintiff was an

officer of the company, an owner of one half of its stock. His duty as well as his self-interest required him to exert his best effort on behalf of the corporation. When he did it he did not do it for the defendant. He did it for the company and he shared immediately and directly in the result. By the terms of the contract he did not agree to remain in the employ of the company; he did not even agree to remain a stockholder; he did not agree to pay for the stock. He even reserved the right to conduct a separate business activity for his own account and to cancel the arrangement.

We are unable to discover any single fact which tends to establish part performance of this contract on the part of the plaintiff. He had a right under the terms of the agreement of March 14, 1928, to acquire the stock. But, having paid no part of the consideration, he is clearly not entitled to specific performance. There is in this case no actual, valuable, adequate consideration such as entitles the plaintiff to specific performance of the contract. *Squier v. Harnischfeger, supra;* Pomeroy, Eq. Jur. (4th ed.) p. 3115, § 1293; *Ludwig v. Ludwig* (1919), 170 Wis. 41, 172 N. W. 726; *Watford Oil & Gas Co. v. Shipman* (1908), 233 Ill. 9, 84 N. E. 53; *Lamprey v. Lamprey* (1882), 29 Minn. 151, 12 N. W. 514.

None of the elements of estoppel are present in this case. The case cannot be distinguished from *Squier v. Harnischfeger, supra,* which rules it. See also *Drake v. Reiner* (1932), 259 N. Y. 308, 181 N. E. 582. Plaintiff is not entitled to specific performance. We do not consider or determine any other question in the case.

*By the Court.*—Judgment affirmed.