VORPAHL and wife, Appellants, v. GOSSMAN and others, Respondents.

*April 29—June 2, 1964.*

234

For the appellants there was a brief and oral argument by *E. A. Stecker* of Appleton.

For the respondents there was a brief by *Don R. Herrling* of Appleton, attorney, and *John H. Lungren* and *M. R. Burmaster* of counsel, both of Milwaukee, and oral argument by *Mr. Herrling.*

WILKIE, J. The first issue raised on this appeal is: *Have the appellants waived their right to enjoin the construction of the Clark service station by virtue of their failure to commence an action seeking to enjoin the construction of a Standard service station immediately adjacent to their property?*

The Standard Oil station lies immediately adjacent to the Vorpahls' property. When construction of this building began, the Vorpahls consulted an attorney, seeking advice on whether the project could be enjoined as a violation of the one-gas-station-only covenant. The attorney apprised them that because the property upon which the station was being constructed had reverted to the county because of nonpayment of tax, and because the tax deed which transferred title

to the person from whom Standard obtained the property did not expressly set forth the covenant, the restriction was no longer binding upon Standard with regard to that property. This opinion was confirmed by an attorney for Standard Oil. Whether or not the legal advice given was correct is immaterial. Certainly an acceptance of an attorney's view as to the success of asserting rights in litigation cannot be deemed as a waiver of those rights in all subsequent contexts.

In 1962, the Vorpahls, observing the construction of the Clark station on lot 4 and the south half of lot 5, immediately commenced this action. They have properly preserved their rights to enforce the covenant, upon proof of the merit of their substantive claims.

The second issue raised on this appeal goes to the merits and may be stated as follows: *Is the restrictive covenant, limiting construction of service stations in the Lynch plat to a particular lot other than the property in question, part of a comprehensive developmental scheme mutually beneficial to both Mary Lynch and all subsequent grantees, and therefore enforceable by injunction in the present case?*

A restrictive covenant made binding, by the express terms of a warranty deed, upon the grantor and his heirs and assigns and the grantee and his heirs and assigns, shall be enforceable by injunction if the covenant is an element of a comprehensive developmental scheme which is mutually beneficial to both the grantor and the grantee and other adjacent property owners who purchase their property through the grantor, subject to the same covenant.[1]

The critical question in the application of this general rule in the instant case is whether the restriction on the number

[1] *Boyden v. Roberts* (1907), 131 Wis. 659, 111 N. W. 701; *Schneider v. Eckhoff* (1926), 188 Wis. 550, 206 N. W. 838; *Hall v. Church of the Open Bible* (1958), 4 Wis. (2d) 246, 89 N. W. (2d) 798.

of filling stations in the Lynch plat can be regarded as part of a property development scheme mutually beneficial to all holders of property within the plat. The language of the restriction is unequivocal. Only lot 1 of block 3 could be used for filling station purposes. In what manner could this restriction confer benefits upon all other property owners in the plat?

In 1927, when the plat was drawn, block 3 and the surrounding area were already the site for a number of retail commercial establishments. In the area there were four taverns, one including restaurant facilities, a greenhouse and an implement shop. In light of the unambiguous language of the covenant in issue, and the content of other covenants relating to the kinds of business that could be maintained in the area, it is clear that Mary Lynch intended the plat to become the location for a variety of small retail establishments. Persons purchasing through Mary Lynch, such as the plaintiffs who operate an upholstering and custom furniture shop, shared the same purpose. By maintaining a variety of establishments, each retailer could reinforce the position of the other. While on a trip to pick up one particular retail item, a customer could easily satisfy a number of other needs by visiting other retail shops located in the immediate vicinity.

However, a filling station is the classic example of a one-stop operation. One does not visit adjacent shops when having a car serviced for gas and oil. Therefore, to permit retailers in the Lynch plat to be surrounded by filling stations would be to deprive them of the neighborhood shopping-center effect which was the benefit they obtained in consideration for the limitation upon their power to alienate property purchased from Mary Lynch. While the effect of the restriction may well have been to increase the value of the parcel designated for filling station construction in 1927,

it cannot be maintained that this was Mary Lynch's sole motivation in creating the restrictive covenant.

Equity will not enforce restrictive covenants where the character of the neighborhood has so changed as to make it impossible to accomplish the purpose intended by such covenants.[2] The change contemplated by this rule is qualitative, *i.e.,* a shift from a residential area to commercial. No such change has been shown here. In 1927, the area already was a site for commercial retail establishments. The restrictions were to insure development of the area for commercial uses and the area has developed along these lines. The fact that the form of retail establishments has altered (the Valley Fair shopping center is located across the street from the property in question) and the fact that the one lot reserved for filling station purposes is now being used for a supper club, does not mean that the qualitative character of the area has changed. It is still commercially oriented, and the changes in the area are not such as to make unjust and inequitable the enforcement of the covenant under the circumstances that existed at the time the enforcement of the covenant was sought.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

[2] *Ward v. Prospect Manor Corp.* (1926), 188 Wis. 534, 206 N. W. 856.