COBB and others, Plaintiffs and Respondents, v. MILWAUKEE COUNTY and others, Defendants and Appellants: CITY OF MILWAUKEE, Defendant and Respondent.

*No. 461. Argued June 5, 1973.—Decided June 29, 1973.*
(Also reported in 208 N. W. 2d 848.)

100

104

For the appellants there were briefs by *Robert W. Warren*, attorney general, and *Richard E. Barrett*, assistant attorney general, attorneys for Wisconsin Department of Transportation, and *Robert P. Russell*, corporation counsel, attorney for Milwaukee County and Milwaukee County Expressway and Transportation Commission, and oral argument by *Mr. Russell*.

For the plaintiffs-respondents there was a brief by *Walther & Halling*, attorneys, and *David L. Walther* and *F. M. Van Hecke* of counsel, all of Milwaukee, and oral argument by *David L. Walther* and *Mr. Van Hecke*.

For the defendant-respondent there was a brief by *James B. Brennan*, city attorney, and *Gerald V. Kortsch* and *Francis T. Wasielewski*, assistant city attorneys, and oral argument by *Mr. Kortsch* and *Mr. Wasielewski*.

HANLEY, J. The parties submitted the following as the issue presently before this court on appeal: Do the

restrictions in the documents conveying title and transferring control of park lands from the city to the county preclude the construction of a state highway on such lands?

However, by letter dated May 3, 1973, this court requested the parties to respond to the following four questions:

1. Do the plaintiffs have standing to maintain a derivative action on behalf of a municipal corporation?

2. Is the deed condition a covenant which can be enforced by injunction, or is the city's remedy for violation of the condition a forfeiture of the county's title?

3. Is injunction a proper remedy for protecting the city's interest in the submerged lands which have been leased to the county?

4. Does the proposed freeway use violate the use restrictions in the lease?

*Standing to maintain a derivative action.*

The six plaintiffs are all residents of Milwaukee county with four of the plaintiffs residing in the city of Milwaukee. The action is brought on their own behalf as taxpayers and also on behalf of the city of Milwaukee who is a named defendant.

The law as it relates to the question of standing to bring an action on behalf of a municipality has been most succinctly stated in 18 McQuillin, *Municipal Corporations* (3d ed. rev. 1963), pp. 33–36, sec. 52.17. It is there stated that:

**"Actions on behalf of municipality.**

"Taxpayers may sometimes sue on behalf of a municipal corporation, to enforce causes of action in its favor, when its officers refuse to do so, and may sometimes take up and carry forward pending litigation which the officers wrongfully abandon, sue to set aside default judgments, or prosecute appeals from judgments against the municipality. Thus, taxpayers may bring suit to

recover property belonging to the municipality, or for any money which has been paid out or released without authority of law, or to enforce a cause of action belonging to the municipality against a person having money or property belonging to the municipality or who is otherwise liable to suit, provided conditions required by the particular court or state are complied with.

"The right of taxpayers to sue upon behalf of a city is generally subject to the following conditions and exceptions: (1) the municipality itself must have a clear right and power to sue; (2) a taxpayer cannot sue third persons in behalf of the municipality unless the bringing of such action is a duty devolving upon the municipal authorities, as to which they have no discretion and which they have refused to perform; (3) either a demand must have been made that suit be brought by the public officers of the municipality, or it must be alleged and shown that such demand would be unavailing; and (4) the action does not lie where it would be grossly inequitable to enforce the claim, nor where the basis thereof is a claim of the taxpayer's rather than that of the municipality. However, the remedy of the taxpayer, in such cases, may not be necessarily confined to a direct action against those against whom the municipality has a cause of action.

"The basis of this class of actions is not that there is necessarily a personal and direct pecuniary loss to the taxpayer, but that the public moneys, rights or property are about to be squandered or surrendered, and that such moneys, rights or property belong to the body of taxpayers, and are simply held in trust by the unfaithful public officers. So a resident taxpayer may sue its officers who have squandered or dissipated its funds, or paid them out for an unlawful or unauthorized purpose, to recover such funds for the benefit of the municipality, where its proper law officer neglects and refuses to prosecute such an action."

In support of this proposition, McQuillin cites *Linden Land Co. v. Milwaukee Electric Railway & Light Co.* (1900), 107 Wis. 493, 83 N. W. 851. This court in *Linden* took great care to point out the very subtle

distinction which exists between the type of action brought in the present case—a derivative action—and the more typical taxpayers' action. At pages 503 and 504, the court stated:

"These cases [taxpayers' actions] go on the principle that the money or property so squandered or about to be squandered is the money of the taxpayers, and hence every taxpayer has a substantial interest in it, which he is entitled to have protected. Upon similar principles a taxpayer's right to enforce a cause of action of the corporation is upheld where the corporate officials wrongfully refuse or neglect to perform that duty. *Estate of Cole: Mulberger v. Beurhaus,* 102 Wis. 1. Here the basis of the right is not that there is necessarily a personal and direct pecuniary loss to the taxpayer, but that the public moneys, rights, or property are about to be squandered or surrendered, and that such moneys, rights, or property belong to the body of taxpayers, and are simply held in trust by the unfaithful public officials. This is well illustrated in the case of *Estate of Cole,* just cited, where real and personal property was willed in remainder to a city in trust for the establishment of a public library and a home for the aged poor, and a controversy arose between the executors and the city, in the county court, as to whether certain expenditures upon the property should be charged against the life tenant of the property, or against the *corpus* of the estate. The county court decided against the city, and, the city officials declining to appeal, a taxpayer intervened and took the appeal to the circuit court; and his right to do so was sustained by this court. Here no taxpayer could be said, in strictness, to have suffered a direct or pecuniary injury by the decision of the county court, or the failure to appeal therefrom; but the illegal diminution of the trust property was a distinct invasion of the property of the corporation, in which each individual taxpayer or member of the corporation had a substantial interest, notwithstanding the property could only be used for the purposes of the trust and its entire loss would not necessarily result in increased taxation. So understood, the case is in entire harmony with the general principles laid down in the other cases in this court."

In the instant case, the right and power of the city of Milwaukee to enforce the restrictions contained in both its deed to and contract with Milwaukee county is clear and not subject to realistic challenge. On appeal, the city of Milwaukee does not dispute the fact that they have a duty to prosecute such an action against Milwaukee county from allowing the state to enter the lands involved in this action nor do they contend that they are by some manner clothed with any discretion. Although only four of the six plaintiffs are city of Milwaukee residents, the defendants do not challenge their presence in this lawsuit, nor do they contend that anything but a proper demand was placed upon it to enforce its rights under the deed and contract. Consequently, for purposes of the present action, the parties have proper standing to enforce the rights of the city of Milwaukee as created by the deed and contract.

*Enforceability of deed and contract restrictions by injunction.*

It is well established that an injunction may be used to prevent prospective or threatened violations of a restrictive covenant. 20 Am. Jur. 2d, *Covenants, Conditions,* p. 876, sec. 312; *Vorpahl v. Gossman* (1964), 24 Wis. 2d 232, 128 N. W. 2d 430. In *Schneider v. Eckhoff* (1926), 188 Wis. 550, 206 N. W. 838, certain property owners sought to enforce building line restrictions which were contained in their deeds as well as in that of the defendant. After setting forth the restrictions, the deed provided that ". . . upon the happening of . . . the aforesaid events or contingencies this deed shall become forfeited . . . [and] at once revert to and revest in and become the property of said first parties, their successors or assigns . . . ." Despite the condition for forfeiture contained in the lease, this court approved the entering of the injunction; modifying it only as to its scope and timetable.

*Injunction as it relates to leased land.*

Likewise, injunction is available even though the forfeiture is contained in a lease rather than a deed, if the provision is otherwise enforceable in a court of equity. *Cities Service Oil Co. v. Kuckuck* (1936), 221 Wis. 633, 267 N. W. 322. At page 639, the court stated:

"The remedy of injunction has been recognized as a proper device to specifically enforce negative promises by enjoining breach of them, and in the case of a contract consisting wholly of negative stipulations, complete specific performance may be granted by injunction. *E. L. Husting Co. v. Coca Cola Co.* 205 Wis. 356, 237 N. W. 85, 238 N. W. 626."

In the case at bar, it is clear that injunction could be used to enforce the restrictions in the deed and contract and the defendants in no way contend to the contrary.

*The proposed freeway use violates the use restrictions in the lease.*

Pursuant to the lease in question, Milwaukee county agreed that "said premises shall be used exclusively as a public park, parkway, amusement or recreation grounds." The trial court found that these restrictions were in full force and effect and that the use of the land for expressway, freeway, or interstate highway purposes to be inconsistent with park and parkway purposes as those terms were intended in the agreement. On appeal, the defendants contend that in 1936 when the park lands were leased to the county the term "parkway" can now be construed also to mean "expressway" or "freeway." On the other hand, plaintiffs submit that the terms "freeways," "expressways" and "parkways" are not interchangeable.

In the case of *School District of Kansas City v. Kansas City* (1964), 382 S. W. 2d 688, the Supreme Court of Missouri defined the term "parkway" as follows:

"The term may refer to a thoroughfare or roadway which is landscaped or located in a park from which trucks and other heavy vehicles are excluded, or it may be used to designate the landscaped strip of land paralleling or in the center of a thoroughfare. Webster's Third New International Dictionary. It is properly stated in McQuillin, Municipal Corporation, 3d Ed., Vol. 10, sec. 30.05, that: 'A parkway, as ordinarily understood, is neither exclusively a street nor exclusively a park but partakes of the character of both.'" P. 694.

What is contemplated by the defendants is an elevated multilane, multilevel, high-speed conveyor of metropolitan traffic with various interchanges, all passing over what is essentially now Lakeshore Drive and the present Juneau Park Lagoon. By no reasonable construction of the 1936 agreement between the city and the county, could it be said that either the parties to it or the general electorate of Milwaukee who originally authorized it intended "parkways" to also include a modern-day expressway. Such a conclusion is also supported by cases from other jurisdictions.

In the case of *Hall v. Fairchild-Gilmore-Wilton Co.* (1924), 66 Cal. App. 615, 227 Pac. 649, the California District Court of Appeal held that a taking of a portion of a public park for a highway was totally inconsistent with the purpose for which the park was originally dedicated. The court stated at page 622:

"We are not unmindful of the rule that if the area of a park is used for buildings or activities of any character incidental to its enjoyment as a park, such use will be upheld by law, but we know of no authority which has held that the taking of any portion of the space of a park and devoting it to strictly highway purposes can be regarded as consistent with the original dedication. On the contrary, the following cases hold that such action is inconsistent with the use of land for park purposes, and is therefore void:"

The cases which the defendants cite [2] as authority for the proposition that the agreement referring to "parkways" embraced the type of construction contemplated here are inapplicable in that they refer either to a factual controversy unrelated to the present situation or simply contain dicta which was made without consideration of whether a party to a contract made three decades ago, could have then envisioned what has now come to be thought of as the most "up-to-date" mode of travel by automobile or truck.

In *Robbins v. Lincoln Park Commissioners* (1928), 332 Ill. 571, 164 N. E. 10, the defendants had there been granted land for "park purposes." The complaint alleged that there was a plan to provide for the building of a "boulevard or driveway" 122 feet from the shoreline which would interfere with the use of the intervening submerged land for park purposes. Likewise, the boulevard was elevated, crossing intersecting streets by viaducts. Holding that an injunction would lie, the court stated at page 581:

"While these do not forbid the building of another boulevard, yet a boulevard which would interfere with the use of the intervening submerged lands as a park when the same shall have been filled in is contrary to the plan of the act to use such lands as a park, and the averment in the bill that the commissioners propose to build across these submerged lands, when so filled, an elevated structure which will interfere with the use of such lands for park purposes as contemplated in the act and will result in injury to the property rights of land owners, is sufficient, if true, to authorize the granting of relief prayed in the bill."

[2] *Stock v. Cox* (1939), 125 Conn. 405, 6 Atl. 2d 346; *State v. Williams* (1961), 207 Tenn. 695, 343 S. W. 2d 857; *State v. Lane* (1967), 4 Conn. Cir. 368, 232 Atl. 2d 518; *Kleopfert v. City of Minneapolis* (1903), 90 Minn. 158, 95 N. W. 908; *Chaplin v. Kansas City* (1914), 259 Mo. 479, 168 S. W. 763.

*May the state in the future construct an expressway on the land?*

Upon the facts submitted, the freeway here involved will be a state trunk highway with all construction contracts for it being let by the state. It is contemplated that title to all lands required for construction will be eventually acquired by the state of Wisconsin.

Based upon the deed restriction contained in the conveyance from the city to the county and upon the fact that the city of Milwaukee has never sought to enforce its reverter rights, the trial court held that plaintiffs were entitled to an injunction and entered judgment accordingly. The judgment stated that:

"1. That the Defendants, Milwaukee county, Milwaukee County Expressway and Transportation Commission, and Wisconsin Department of Transportation, their agents, assigns and employees, be and they hereby are, enjoined and restrained from entering or causing to have entered pursuant to any right of entry or by any other means, for purposes of or purposes related to the construction, extension, or establishment of any freeway, expressway, or component of the Interstate Highway System . . . ."

The defendants now seek from this court a determination of whether the restrictions contained in the deed and contract which conveyed title and control of park land from the city to the county preclude the construction of a state highway on this land. The defendants admit that there presently remain the following outstanding interests to be acquired before they may proceed with the construction of the expressway: the reversionary interest in the city of the lands lying to the west of the railroad right-of-way ("E" Area), which was created by the deed of conveyance from the city to the county; the reversionary interest in the abutting or upland owners of the land lying east of the railroad right-of-way ("B" Area) created by ch. 200, Laws of 1897; and whatever lease-

hold interest which the city might have in its contract with the county to use the land there involved for "park and parkway purposes only." Likewise, there may be outstanding federal interests which might have to be reconciled.

Although the state admits that these interests must be acquired before they can proceed, they contend that the trial court's judgment is written in a way that would preclude the state from proceeding even after these outstanding interests have been acquired. The judgment is written in very broad language and without recognition of the status of the state to proceed at a future time when the interests referred to have been acquired. The state's power pursuant to sec. 84.09, Stats., lies at the very heart of this question.

Sec. 84.09, Stats., is a very broad grant of power to the state to "acquire by gift, devise, purchase or condemnation any lands for establishing . . . [and] constructing . . . highways . . . ." Similarly, sub. (1) expressly authorizes for the purpose of this section, acquisition for a public use of property which is already being devoted to a public use. It is clear that sec. 84.09 vests authority in the state to acquire the outstanding interests for the purpose of constructing an expressway on the land involved.

In 1 Nichols, *Eminent Domain* (3d ed. 1964), pp. 203–211, sec. 2.2, the general rule is stated:

"**Public property.** In the determination of the question whether or not property already devoted to a public use can be subjected to the process of eminent domain the primary factor to be considered is the character of the condemnor.

"If the sovereign, such as the state or the United States on its own behalf and for its own sovereign purposes, seeks to acquire such property by eminent domain, the character of the *'res'* as public property, generally, has no inhibiting influence upon the exercise of the power."

As of the time of trial and even as of the date when the appeal in this matter was heard, the state had not as yet begun to acquire these outstanding interests, either by gift, purchase or condemnation; though it is admitted and a part of the agreed case that, at the request of the defendant, Milwaukee County Expressway and Transportation Commission, on or about May 11, 1971, the defendant, Milwaukee county, granted to the defendant, Wisconsin Department of Transportation, the right to enter upon the park lands to construct an expressway thereon.

In the case at bar, the state admits that it has been granted a right of entry for the purposes of constructing an expressway in direct derogation of numerous outstanding interests which have yet to be acquired. In order to protect the interests of the city and others and to prevent irreparable damage, injunctive relief was necessary.

The question to be determined is whether the trial court's judgment granting a permanent injunction was too broad in scope. We think it was. An appropriate remedy under the particular facts of this case would have been an injunction enjoining and restraining defendants from constructing the expressway until such time as the outstanding property interests were acquired.

The injunction which accompanied the judgment in this case enjoins and restrains the defendants from constructing the expressway even in the event they have acquired the outstanding property interests by gift, sale or condemnation proceedings.

We conclude that paragraph one of the judgment should be modified to read as follows:

1. That the defendants, Milwaukee county, Milwaukee County Expressway and Transportation Commission, and Wisconsin Department of Transportation, their agents, assigns and employees, be and they hereby are,

enjoined and restrained from the construction, extension, or establishment of any freeway, expressway, or component of the Interstate Highway System on the property described with particularity in the agreed case herein as described and shown in the Exhibit 23 therein until such time as said defendants acquire the following outstanding interests:

1. The reversionary interest in the city of the lands lying to the west of the railroad right-of-way.

2. The reversionary interest in the abutting or upland owners of the land lying east of the railroad right-of-way.

3. Whatever leasehold interest which the city might have in its contract with the county to use the land there involved for "park and parkway purposes only."

*Recovery of attorney's fees.*

Plaintiffs have cross-appealed from that part of the judgment which denies them their expenses of litigation. Both the trial court and defendant city of Milwaukee have relied upon sec. 271.04 (8), Stats., which provides:

"(8) . . . In all actions brought for the benefit of any county, town, village, city or other municipal corporation of this state by a citizen taxpayer, the plaintiff shall be entitled to recover for his own use, in case he shall prevail, the taxable costs of such action and such part of the recovery as the court shall deem reasonable, as attorney's fees, not to exceed 20 percent of such recovery, and not to exceed $500."

The above section sets out the conditions which must be found to exist before attorney's fees may be considered by the court. These conditions may be stated as follows:

(1) The action must be brought for the benefit of the municipality;

(2) The plaintiff must prevail in the action;

(3) There must be a recovery in the nature of a sum certain or liquidable asset out of which attorney's fees, as the court shall deem reasonable, may be awarded to the plaintiffs, but not to exceed 20 percent of the recovery nor $500.

This being a statute in derogation of the common law, the trial court gave it a strict construction as required by the case of *Martineau v. State Conservation Comm.* (1972), 54 Wis. 2d 76, 194 N. W. 2d 664. The court held that the third condition was not met. In order for attorney's fees to be awarded on a percentage basis, recovery must be in the form of a sum certain or other asset which can be liquidated. In this case, there was no such recovery. No common fund was created or preserved by plaintiffs' action.

It is clear that sec. 271.04(8), Stats., does not provide for the recovery of attorney's fees and despite the fact that plaintiffs have relied on various theories of recovery, no express statutory authorization can be found.

We conclude that the judgment as modified must be affirmed.

*By the Court.*—Judgment modified and, as modified, affirmed.